**UNITED STATES v. MARYLAND &
VIRGINIA MILK PRODUCERS
ASS'N, Inc., et al.**

**No. 10045.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 18, 1949.

Decided June 17, 1949.

Writ of Certiorari Denied Oct. 10, 1949.
See 70 S.Ct. 72.

Mr. Herbert A. Bergson, Assistant Attorney General, for appellant.

Mr. George Morris Fay, United States Attorney, Washington, D. C., also entered an appearance for appellant.

Mr. William E. Leahy, Washington, D. C., with whom Messrs. Elwood H. Seal, William J. Hughes, Jr., Washington, D. C., and Robert R. Smyers, were on the brief, for appellees Maryland & Virginia Milk Producer's Ass'n, Inc., and B. B. Derrick.

Mr. Arthur B. Hanson, Washington, D. C., with whom Mr. Elisha Hanson, Washington, D. C., was on the brief, for appellee Safeway Stores, Inc.

Messrs. Roger J. Whiteford, John J. Wilson, and Jo V. Morgan, Jr., Washington, D. C., were on the brief for appellee Chestnut Farms-Chevy Chase Dairy Co.

Mr. Samuel O. Clark, Jr., Washington, D. C., was on the brief for appellee Thompson's Dairy, Inc.

Messrs. Raymond Sparks and Wm. V. T. Justis, Washington, D. C., also entered appearances for appellee Thompson's Dairy, Inc.

Mr. W. Gwynn Gardiner, Washington, D. C., was on the brief for appellee Richfield Dairy Corporation.

Messrs. James M. Earnest, Washington, D. C., and Edgar A. Wren, also entered appearances for appellee Richfield Dairy Corporation.

Mr. John F. Hillyard, Washington, D. C., was on the brief for appellee Simpson Bros., Inc., t/a Wakefield Dairy.

Mr. William Blum, Jr., Washington, D. C., was on the brief for appellee Alexandria Dairy.

Mr. Ralph W. Powers, Washington, D. C., was on the brief for appellee Harvey Dairy, Inc.

Messrs. Marion R. Garstang and Harry J. Scharnikow were on the brief for the National Cooperative Milk Producers Federation as amicus curiae.

Before EDGERTON and WILBUR K. MILLER, Circuit Judges, and JAMES W. MORRIS, District Judge sitting by designation.

EDGERTON, Circuit Judge.

The government appeals from an order dismissing an indictment charging conspiracy to restrain trade in milk and milk products in the District of Columbia, and between the District and adjoining States, in violation of Sec. 3 of the Sherman Act, 26 Stat. 209, 15 U.S.C.A. § 3. The government first appealed directly to the Supreme Court, which remanded the case to this court pursuant to 34 Stat. 1246, as amended, 18 U.S.C.A. § 3731. United States v. Maryland & Virginia Milk Producers Ass'n, Inc., et al., 335 U.S. 802, 69 S.Ct. 35.

The paragraphs of the indictment indicated by the figures in parentheses make substantially the following statements. The appellees are an incorporated Association, the members of which are about 1,500 Maryland and Virginia milk producers who supply 80 percent of the milk sold to distributors in the Washington metropolitan area (20); the Secretary-Treasurer of this Association (9); and seven corporations that distribute milk and its products to consumers and other purchasers in the District of Columbia. These distributors buy and resell 86 percent of all milk supplied to the Washington metropolitan area (21). Appellees have conspired to eliminate and suppress competition in the sale of milk to these distributors, in its purchase by them, and in its resale by them to consumers and other purchasers (35). For those purposes (36, 37) appellees have done these things. Appellee distributors have contracted with appellee Association that they will buy no milk from producers or others who are not members of the Association, but will buy only from the Association, as far as it is able to supply their needs, which it agrees to do as far as it can (36(a) (b)).

428

Appellees have agreed to fix the prices at which the distributors will buy milk (36 (g)) and also the prices at which they will resell it (36(m)). They have agreed on a classification of milk for price purposes according to use (36(f) (g)). They have agreed that appellee distributors will remove from the market "excess" milk, i. e., any milk the Association has for sale in excess of the amount these distributors can resell at the prices agreed upon (36 (n) (o)). They have agreed that the Association will prevent and eliminate competition from distributors not parties to the conspiracy by inducing them not to cut prices, attempting to deprive price-cutters of adequate supplies of milk, interfering with the transportation of milk to them, furnishing milk to appellee distributors at reduced rates for use in taking away contract business from price-cutters, and driving them out of business (36(p)). They have agreed that the Association will not supply milk, to any distributor not agreeing to buy his full supply from the Association, at prices as low as those charged to appellee distributors (36(d)). The conspiracy has been successful: "the defendants by agreement and concerted action have done the things which, as hereinbefore alleged, they conspired to do." (37)

"Price-fixing agreements are unlawful per se under the Sherman Act and * * * no showing of so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense. * * *. If the so-called competitive abuses were to be appraised here, the reasonableness of prices would necessarily become an issue in every price-fixing case. In that event the Sherman Act would soon be emasculated; its philosophy would be supplanted by one which is wholly alien to a system of free competition. * * * Any combination which tampers with price structures is engaged in an unlawful activity. Even though the members of the price-fixing group were in no position to control the market, to the extent that they raised, lowered, or stabilized prices they would be directly interfering with the free play of market forces. The Act places all such schemes beyond the pale * * *." Accordingly the government need not show or allege that prices have been "raised and maintained at 'high, arbitrary and non-competitive levels.'" United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 218, 221, 222, 60 S.Ct. 811, 842, 84 L.Ed. 1129. "Also it is unreasonable, per se, to foreclose competitors from any substantial market." International Salt Co. v. United States, 332 U.S. 392, 396, 68 S.Ct. 12, 15, 92 L.Ed. 20. Therefore "full supply contracts", however legal they may be in other circumstances, cf. Pick Mfg. Co. v. General Motors Corp., 299 U.S. 3, 57 S. Ct. 1, 81 L.Ed. 4, are illegal when made for the purpose of eliminating and suppressing competition. Complete monopoly is of course unnecessary; "the amount of interstate trade * * * affected by the conspiracy is immaterial in determining whether a violation of the Sherman Act has been charged in the complaint." United States v. Yellow Cab Co., 332 U.S. 218, 225, 67 S.Ct. 1560, 1564, 91 L.Ed. 2010.

Although the Capper-Volstead Act, 42 Stat. 388, 7 U.S.C.A. § 291, and the Clayton Act, 38 Stat. 730, 731, 15 U.S. C.A. § 17, give some privileges to combinations of agricultural producers, a combination of producers and distributors to eliminate competition and fix prices at successive stages in the marketing of an agricultural product is not privileged. United States v. Borden Co., 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181; Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 808, 65 S.Ct. 1533, 89 L.Ed. 1939. "Congress, as a part of its Agricultural Marketing Agreement Act, authorizes the Secretary of Agriculture to issue orders regulating the handling of several agricultural products, including milk * * *. As to milk, it sets up, § 8c(5), 7 U.S.C. § 608c (5), [7 U.S.C.A. § 608c(5)] a rather complicated system of fixing prices to be paid to producers * * *." H. P. Hood & Sons v. Du Mond, 336 U.S. 525, 541, 69 S. Ct. 657, 666. And the same Act, 50 Stat. 246, as amended, 7 U.S.C.A. § 601 et seq., provides in § 608b that with certain limitations "the Secretary of Agriculture shall

have the power * * * to enter into marketing agreements with processors, producers, associations of producers, and others engaged in the handling of any agricultural commodity or product thereof" and "The making of any such agreement shall not be held to be in violation of any of the antitrust laws of the United States, and any such agreement shall be deemed to be lawful." But these provisions expressly involve orders of the Secretary of Agriculture and agreements to which he is a party. Since neither the fixing of prices according to use nor any other feature of the conspiracy charged in this indictment is covered by any such order or agreement, these statutory provisions are immaterial. United States v. Borden, supra, 308 U.S. at pages 199–202, 60 S.Ct. 182, 84 L.Ed. 181.

■ In our opinion, therefore, the court erred in dismissing the indictment as not setting forth sufficient facts to constitute a conspiracy in violation of the Sherman Act.

Reversed.

WILBUR K. MILLER, J., dissents.