**UNITED STATES of America,**
v.
**MARYLAND & VIRGINIA MILK PRODUCERS ASSOCIATION, Inc.,**
**Defendant.**
**Civ. A. No. 4482–56.**

United States District Court
District of Columbia.
Oct. 16, 1958.

See, also, 22 F.R.D. 300.

---

Joseph J. Saunders, Edna Lingreen, Joseph E. Waters, and A. Duncan Whitaker, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Herbert A. Bergson, William J. Hughes, Jr., Daniel H. Margolis, Daniel J. Freed, and Nicholas J. Chase, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is a civil action brought by the United States against the Maryland and Virginia Milk Producers Association, Incorporated, under the antitrust laws, for injunctive and other similar relief. Among the defenses pleaded by the defendant are assertions that under the Clayton Act and the Capper-Volstead Act the defendant, as an agricultural co-operative organization, is exempt and immune from the provisions of the anti-trust laws in respect to the activities of which the government complains. A further defense is that the Secretary of Agriculture has primary jurisdiction of one of the activities concerning which complaint is made. Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the Court has ordered a separate trial of these defenses in view of the fact that if they are sustained in whole or in part they may be finally dispositive of either the entire litigation or some aspects of it.

The complaint is not divided into separate counts, as the Rules permit, but it in effect sets forth three separate claims for relief or causes of action. Although they are not separately numbered in the complaint, they are in fact distinct.

The first cause of action, contained in Paragraphs 21, 22, and 23 of the complaint, alleges that the defendant has attempted to monopolize and has monopolized interstate trade and commerce in supplying milk for resale as fluid milk in the area comprising the District of Columbia and certain regions in Maryland and Virginia adjoining the District of Columbia. This cause of action is based on Section 2 of the Sherman Act, 15 U.S. C.A. § 2, which reads as follows:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor."

The second cause of action, pleaded in Paragraphs 24, 25, 26, 27 and 28 of the complaint, charges a combination and conspiracy to eliminate and foreclose competition in the Washington metropolitan area by making and carrying out a contract for the transfer to the defendant of substantially all of the assets of a concern known as the Embassy Dairy, which is a retail outlet for milk in the Washington metropolitan area. This cause of action is predicated on Sections 1 and 3 of the Sherman Act. Section 1 of the Sherman Act, 15 U.S.C.A.

§ 1, reads as follows, insofar as is pertinent to the issues of this case:

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

Section 3 of the Sherman Act, 15 U.S.C.A. § 3, reads, in part, as follows:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or of the District of Columbia, or in restraint of trade or commerce between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia, or with foreign nations, or between the District of Columbia and any State or States or foreign nations, is declared illegal."

The third cause of action is found in Paragraphs 29 and 29(a) of the complaint, and charges that the defendant on July 26, 1954, purchased and acquired substantially all of the assets of the Embassy Dairy and that the effects of this acquisition have been and may be substantially to lessen competition or to tend to create a monopoly in the production and sale of milk to dealers in the Washington metropolitan area. It is further charged that with the same effect the defendant on December 6, 1957, purchased and acquired all of the outstanding stock of Richfield Dairy Corporation and Simpson Brothers, Incorporated. This cause of action is founded on Section 7 of the Clayton Act, 15 U.S.C.A. § 18, the pertinent portions of which read as follows:

"No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

As a result of lengthy and detailed discovery proceedings, as well as by proof at the trial, the following pertinent facts that are relevant to the defenses now being tried have been developed. The defendant, Maryland and Virginia Milk Producers Association, Incorporated, is a Maryland corporation having its principal office in the District of Columbia. It is an agricultural cooperative association, having as members nearly two thousand milk producers, that is, persons owning or operating dairy farms at which milk is produced, most of the members being located in the States of Maryland and Virginia. The milk is delivered by the members to the defendant, which acts as the marketing agency for them. Most of the milk is sold eventually to dealers in the Washington metropolitan area. The defendant also owns a plant at which it transforms surplus milk into various milk products, such as ice cream. These by-products are shipped to other markets. The net worth of the defendant corporation is approximately five million dollars. Most of its members are natural persons. Some, however, are partnerships and some are corporations. Some of the members devote all or a major portion of their time and energy to operating their dairy farms themselves. Some of them operate their farms through employees and are engaged principally in other occupations.

The defendant claims to be exempt from the provisions of the antitrust laws under two distinct statutes. The first is Section 6 of the Clayton Act, which became law on October 15, 1914. Its pertinent portions, 15 U.S.C.A. § 17, read as follows:

"Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations, instituted for the pur-

poses of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws."

The second statute under which immunity is claimed is Section 1 of the Capper-Volstead Act, which became law on February 18, 1922. This provision, 7 U.S.C.A. § 291, reads as follows:

"Persons engaged in the production of agricultural products as farmers, planters, ranchmen, dairymen, nut or fruit growers may act together in associations, corporate or otherwise, with or without capital stock, in collectively processing, preparing for market, handling, and marketing in interstate and foreign commerce, such products of persons so engaged. Such associations may have marketing agencies in common; and such associations and their members may make the necessary contracts and agreements to effect such purposes: *Provided, however,* That such associations are operated for the mutual benefit of the members thereof, as such producers, and conform to one or both of the following requirements:

"First. That no member of the association is allowed more than one vote because of the amount of stock or membership capital he may own therein, or,

"Second. That the association does not pay dividends on stock or membership capital in excess of 8 per centum per annum.

"And in any case to the following:

"Third. That the association shall not deal in the products of nonmembers to an amount greater in value than such as are handled by it for members."

The first question to be determined is, whether these two statutes, or either of them, are applicable to this defendant. So far as the Clayton Act is concerned, it comprehends within its scope all agricultural organizations instituted for the purposes of mutual help and not having capital stock or conducted for profit. Unquestionably, the defendant is an agricultural organization. It is instituted for the purposes of mutual help because it acts as the marketing agency for all of its members and pays over to its members the proceeds of the milk sales, with a deduction, of course, for overhead and similar expenses. The defendant does not have capital stock and it is not conducted for profit except as such profit may accrue to its members. Clearly, therefore, the defendant is within the scope of the Clayton Act.

The next query is, whether it is within the scope of the Capper-Volstead Act, which has been quoted. As has been stated, that statute authorizes persons engaged in the production of agricultural products as farmers or dairymen to act together in associations, corporate or otherwise, with or without capital stock. It is urged by the government that the words "dairymen" and "farmers" should be restricted to natural persons who personally work on dairy farms and who derive the major portion of their income from the farms. The Court sees no basis for such a restricted definition. The owner or operator of a dairy is a dairyman, whether he personally works on his dairy or has the work done by employees. So, too, the owner of a farm may be regarded as a farmer even though he devotes the major portion of his activities to other pursuits. When Congress desired to put a more circumscribed definition on the term "farmer" it did so expressly, as is true of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. The Court, therefore, is of the opinion that it is immaterial whether every member of the association personally works on his farm or whether every member of the association is a natural person or a corporation. Under these

circumstances, the Court concludes that the defendant corporation is of the type that is comprehended within the terms of the Capper-Volstead Act.

The next question is, whether it qualifies under the provisos contained in the Act. Taking first the third proviso, because that is applicable to all corporations claiming the benefits of the statute, namely, that the association shall not deal in the products of nonmembers to an amount greater in value than such as are handled by it for members, it is not disputed that this condition is met. As to the first and second provisos, the law does not require compliance with both but merely with either one. The first proviso imposes a condition that no member of the association shall be allowed more than one vote. The proof shows that this condition has been met. It therefore becomes unnecessary to decide whether the second proviso is also complied with. The Court, consequently, reaches the conclusion that the defendant corporation is entitled to the benefits of both the Clayton and the Capper-Volstead Acts and to the exemptions and immunities conferred by those two statutes.

We then reach the main question to be determined, whether these exemptions and immunities are sufficiently broad to cover the activities of which the Government complains. This brings us back to the precise provisions of, first, the Clayton Act, and then the Capper-Volstead Act.

Section 6 of the Clayton Act, on which the defendant relies, 15 U.S.C.A. § 17, provides in its pertinent clauses that:

"Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of agricultural * * * organizations instituted for the purposes of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws."

If we compare these provisions with the provisions of Section 1 of the Capper-Volstead Act, 7 U.S.C.A. § 291, which has been quoted above, we reach inescapably the conclusion that in effect the Capper-Volstead Act adds nothing to the immunities and exemptions of the Clayton Act except to extend them to corporations having capital stock and except to make the provisions of the earlier statute more definite and specific. How far the exemptions and immunities of the two statutes extend is a question of novel impression. Although the Clayton Act was enacted as far back as 1914 and the Capper-Volstead Act as far back as 1922, this question has not been definitely determined and is still open. Perhaps this circumstance is due to the fact that but few attempts have been made to prosecute agricultural cooperatives.

First and foremost, the two statutes provide that an agricultural cooperative shall not as such be considered an illegal combination or conspiracy in restraint of trade under the antitrust laws. In other words, such organizations are not per se illegal combinations or conspiracies in restraint of trade. This much is not disputed. There is a controversy, however, as to whether the statutes should be construed as not being limited to covering the mere existence of agricultural cooperatives but as extending to all of the activities of such cooperatives in connection with their legitimate agricultural business. An examination and scrutiny of the provisions of the statutes are required in order to solve this problem.

At the outset, it must be noted that the Clayton Act exempts from the antitrust laws the existence and operation of such organizations. It is not limited to their existence but includes both existence and operation. Moreover, the last clause of the Clayton Act provides that such organizations or members thereof shall not be held or construed to be illegal combinations or conspiracies in restraint of trade. If that clause stood alone, we

would be confronted with a different situation. But it is quite apparent that the Congress, in enacting the Clayton Act, covered not only the existence of such organizations but also their activities and operations and exempted both from the antitrust laws.

█ The same result is reached by an examination of the Capper-Volstead Act, which authorizes persons engaged in the production of agricultural commodities to join together in associations and authorizes such associations and their members to make necessary contracts and agreements to effect their purposes. Obviously, the Capper-Volstead Act is not limited to granting immunity to such associations in respect solely to their existence but extends likewise to their activities.

Support for this conclusion is derived from the reports of Congressional committees in respect to the legislation involved in this case. Chairman Clayton of the House Committee on the Judiciary, in a report dated May 6, 1914, House Report No. 627, 63d Congress, 2d Session, states, on page 36:

"The object of Section 7 is to make clear certain questions about which doubt has arisen as to whether or not fraternal, labor, consumers, agricultural, or horticultural organizations, orders, or associations, organized for mutual help, not having capital stock or conducted for profit, come within the scope and purview of the Sherman antitrust law."

At page 38 he says that Section 7 of the bill will:

"Recognize as legal the existence and operations of fraternal, labor, consumers, agricultural, or horticultural organizations, orders, or associations, organized for purposes of mutual help, and not having capital stock or conducted for profit."

And then he adds:

"It also guarantees to individual members of such organizations, orders, or associations, the right to pursue without molestation or legal restraint the legitimate objects of such association."

The report of the Senate Judiciary Committee, filed by Senator Culberson on July 22, 1914, Senate Report 698, 63rd Congress, 2d Session, contains the following statement:

"The other important and general purposes of the bill are to exempt labor, agricultural, horticultural, and other organizations from the operation of the antitrust acts."

The Government argues that the exemption and immunity from antitrust laws conferred upon agricultural cooperatives should be deemed to extend to certain types of restraints but not to others. To say that it should extend only to reasonable restraints would be fallacious because no legislation was necessary to permit reasonable restraints of trade. They are not banned under the antitrust acts. Consequently, if any restraints are immune from the antitrust acts as a result of the legislation we are considering, they must be unreasonable restraints of trade. The Government argues, however, apparently, that some unreasonable restraints, possibly mild in character, should be permitted, whereas those that are more reprehensible and perhaps predatory should not be deemed exempt or immune under either the Clayton Act or the Capper-Volstead Act. There is no basis in the statutes, however, for separating unreasonable restraints that would otherwise come within the provisions of the antitrust acts into two categories and concluding that some come within the exemption and others do not. To reach any such result would be for this Court to legislate by amending an act of Congress. This the Court cannot do because the Congress itself has not done it.

█ There are indeed well-recognized limitations on the immunities and exemptions granted by the legislation. The exemptions are accorded and immunities are conferred on agricultural cooperatives and their activities. When they step outside of their field and conspire

with persons who are not producers of agricultural commodities, they are beyond the scope of the exemptions. This was held by the Supreme Court in United States v. Borden Company, 308 U.S. 188, 204, 60 S.Ct. 182, 84 L.Ed. 181, which was followed by the Court of Appeals for this Circuit in United States v. Maryland & Virginia Milk Producers Association, 85 U.S.App.D.C. 180, 182, 179 F.2d 426, where it was pointed out that a combination of producers and distributors, the latter not being within the terms of the statutes, is not privileged.

This distinction was formulated by this Court in United States v. Maryland Cooperative Milk Producers, Inc., 145 F. Supp. 151, 153–154, where the Court stated:

> "The obvious purpose of the Clayton Act was to liberate combinations of farmers and their cooperative organizations from the prohibitions of the antitrust laws as long as they do not combine with others who are outside of this category."

The Government relies on the cases of Local 36 of International Fishermen & Allied Workers v. United States, 9 Cir., 177 F.2d 320, 332, and Gulf Coast Shrimpers and Oystermans Association v. United States, 5 Cir., 236 F.2d 658, 664–665. Each of these decisions, however, is distinguishable. The former involved a combination of fishermen and dealers and, therefore, a combination within the ban of the Borden case. The latter presented a situation in which the association did not act as an agency for its members but in which sales were made directly by members to dealers.

██ It must be mentioned in passing that, of course, the exemptions and immunities extend only to provisions of the antitrust acts. They do not confer any right to violate any other statute, criminal or civil. Also, it must be borne in mind that the exemptions and immunities relate solely to activities in connection with agricultural products. If an organization such as the defendant should step outside of that field and carry on business in products of a different nature, then the provisions of the Clayton and Capper-Volstead Acts would not apply.

Subject to these exceptions, the Court is of the opinion that an agricultural cooperative is entirely exempt from the provisions of the antitrust laws, both as to its very existence as well as to all of its activities, provided it does not enter into conspiracies or combinations with persons who are not producers of agricultural commodities. The public does have another remedy against what would otherwise constitute violations of the antitrust laws. Section 2 of the Capper-Volstead Act prescribes a procedure whereby the Secretary of Agriculture may institute administrative proceedings and seek enforcement of his orders in the courts if he finds that such an association monopolizes or restrains trade in interstate or foreign commerce to such an extent that the price of any agricultural product is unduly enhanced. Obviously, this remedy is applicable in only a limited group of cases and the public is not sufficiently protected against restraints of other kinds. Moreover, an agricultural cooperative is apparently not subject to suit by a private person, as is the case with others whose activities come in conflict with the antitrust laws. Thus, it would seem that under the law as it now stands, an agricultural cooperative may monopolize articles of food and unreasonably restrain commerce in such commodities and the public receives no protection from the antitrust laws except in a very limited way.

The Court is not unmindful of the fact that there may be serious dangers lurking to the public weal in this situation if a cooperative becomes too large or grows too powerful. This possibility was pointed out on the floor of the Senate by the opponents of the Capper-Volstead bill, but without avail. Monopolies and restraints of trade are abhorrent to the genius of Anglo-Saxon jurisprudence and its institutions. Monopolies and unreasonable restraints of trade in the neces-

sities of life such as food are particularly obnoxious.

This subject is obviously within the jurisdiction of the Congress alone. For this Court to construe this Act in any other way than that in which it has been framed by the Congress would be to amend the statute. Courts, however, may not legislate. Sometimes, indeed, there is a strong temptation for a court to do so and there have been occasions in which the temptation has not been overcome, but it must be resisted at all hazards. By bringing this suit the Government may have conferred a benefit on the public in that it has definitely pointed out a problem for the Congress to solve.

 The Court, therefore, reaches the conclusion that the Government has no valid claim for relief under Section 2 of the Sherman Act and, therefore, the first cause of action alleged in the complaint will be dismissed on the merits. This brings us to the second and third causes of action, which relate to the acquisition of the assets of Embassy Dairy as well as the stock of the Richfield Dairy Corporation and of Simpson Brothers, Incorporated. The second cause of action alleges a violation of Sections 1 and 3 of the Sherman Act. It charges a conspiracy with certain persons who are not engaged in agricultural pursuits as defined in the statutes. These allegations are clearly within the exception of the Borden case and, therefore, a cause of action is stated in respect to these activities.

The third cause of action relates to the acquisition of the assets of Embassy Dairy and capital stock of Richfield Dairy Corporation and Simpson Brothers, Incorporated, and charges violations of Section 7 of the Clayton Act, 15 U.S. C.A. § 18, the pertinent portions of which have already been quoted. In brief, the statutory provision here involved prohibits any corporation engaged in interstate commerce to acquire the whole or any part of the capital stock of any other corporation likewise engaged in interstate or foreign commerce, and further prohibits any corporation subject to the jurisdiction of the Federal Trade Commission to acquire the whole or any part of the assets of another corporation engaged in interstate or foreign commerce if the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly.

 The defendant claims that this provision is not applicable to it because the Capper-Volstead Act empowers it to make necessary contracts and agreements to effect its purposes. The Court does not agree with this contention. It is a well-known principle of law that repeals by implication are not favored, and unless there is a clear repugnancy between an earlier and a later statute, the two statutes must be so construed as to give effect to each.

 It is the opinion of the Court that the provisions of Section 7 of the Clayton Act, 15 U.S.C.A. § 18, constitute a limitation on the authority of an agricultural cooperative to make contracts as authorized by the Capper-Volstead Act.

 The Court has no doubt that the defendant corporation is subject to the jurisdiction of the Federal Trade Commission, 15 U.S.C.A. § 45, and, consequently, within the terms of Section 7 of the Clayton Act.

The Court, therefore, reaches the conclusion that the second and third causes of action averred in the complaint are valid.

In conclusion, the first cause of action will be dismissed on the merits and the trial will proceed only as to the second and third causes of action.

A transcript of this oral decision will constitute the findings of fact and conclusions of law on the aspects of the case that were tried at this hearing.