INTERSTATE COMMERCE COMMIS-
SION, Plaintiff,

v.

IOWA COOPERATIVE ASSOCIATION,
G & E Transportation, Inc., Palmer Pe-
ters, Oran Kuehl, Kenneth Winser, Rob-
ert J. Weibers, Murlin Johannsen,
George Coats, Elmer W. Adams, and
Western Iowa Pork, Inc., Defendants.

Civ. A. No. 2–559.

United States District Court
S. D. Iowa, W. D.

Dec. 24, 1964.

7.

Harry F. Horak, Kansas City, Mo., for Interstate Commerce Commission.

Monte M. Taylor, Hotz, Hotz & Taylor, Omaha, Neb., Connolly & Connolly, Council Bluffs, Iowa, for defendants.

STEPHENSON, Chief Judge.

The Interstate Commerce Commission (hereinafter called Commission) brings this action pursuant to Title 49, Sections 304(a) (1) and 322(b), U.S.Code, to permanently enjoin Iowa Cooperative Association (hereinafter referred to as ICA) and G & E Transportation, Inc. (hereinafter referred to as G & E) from transporting property in interstate commerce by motor vehicle, for compensation, without appropriate authority from the Commission, and pursuant to Section 2 of the Elkins Act (Title 49, Section 42, U.S.Code) to so enjoin the remaining defendants from aiding and abetting such transportation.

The defendants contend that transportation by Iowa Cooperative Association is exempt under Title 49, Section 303(b) (5), U.S.Code, and that the interstate transportation of dressed hog carcasses is exempt by virtue of Title 49, Section 303(b) (6), U.S.Code.

Trial was held before the Court on December 3, 1964, at Council Bluffs, Iowa, with the plaintiff appearing by its attorney, Harry F. Horak, and the defendants by their attorney, Monte Taylor. The Court, in reaching its conclusions, has considered the pleadings, evidence, stipulations, and arguments and trial briefs of counsel.

The evidence established that the transportation being performed consisted of shipments of dressed hog carcasses, described variously as fresh pork, dressed hogs, dressed pork and meat, for Western Iowa Pork, Inc., from Harlan, Iowa to California points, butter for Farmers Union Cooperative Creamery, from Superior, Nebraska to California points, and fresh fruits and vegetables for various shippers (nonmembers of ICA), from California to midwestern points. Transportation charges are assessed upon either a flat basis or a rate per 100 pounds. The Commission challenges the lawfulness of the meat and butter transportation.

Defendant G & E is an Iowa corporation that owns and leases vehicles which are used in the transportation. Defendants Coats and Adams own all of the issued stock of defendant G & E. Defendant Coats also owns vehicles used in the transportation. As officers of G & E and under an arrangement between G & E and ICA, Coats and Adams manage the transportation herein. Defendants Peters, Kuehl, Winser, Weibers and Johannsen are members, officers and directors of ICA. ICA is an Iowa corporation formed under Chapter 499 of the Code of Iowa for 1950, I.C.A., and purports to perform the transportation. Defendant Western Iowa Pork, Inc. uses the transportation service and its participation is more fully hereinafter set forth.

## AGRICULTURAL COOPERATIVE EXEMPTION

The first question is whether defendants are eligible for the partial exemption accorded cooperative associations by Part II of the Interstate Commerce Act (49 U.S.C. § 301 et. seq.). The exemption provision of Title 49, Section 303(b), reads as follows:

"Nothing in this chapter, except the provisions of section 304 relative to qualifications and maximum hours of service of employees and safety of operations or standards of equipment shall be construed to include * * * (5) motor vehicles controlled and operated by a cooperative association as defined in sections 1141–1141j of Title 12, as amended, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than cooperative associations so defined * * *."

The cooperative association, in order to be eligible to perform for-hire transportation service in interstate commerce by motor vehicle under Title 49, Section 303(b) (5), U.S.Code, must meet the definition of such an association and

comply with the provisions of Title 12, Sections 1141 to 1141j, known as the Agricultural Marketing Act and particularly with Section 1141j thereof, which provides:

"(a) As used in this subchapter, the term 'cooperative association' means any association in which farmers act together in processing, preparing for market, handling, and/or marketing the farm products of persons so engaged, and *also means any association in which farmers act together in* purchasing, testing, grading, processing, distributing, and/or *furnishing* farm supplies and/or *farm business services:* Provided, however, That such associations are operated for the mutual benefit of the members thereof as such producers or purchasers and conform to one or both of the following requirements:

First. That no member of the association is allowed more than one vote because of the amount of stock or membership capital he may own therein; and

Second. That the association does not pay dividends on stock or membership capital in excess of 8 per centum per annum.

And in any case to the following:

Third. That the association shall not deal in farm products, farm supplies, and *farm business services* with or *for nonmembers* in an amount greater in value than the total amount of such business transacted by it with or for members. All business transacted by any cooperative association for or on behalf of the United States or any agency or instrumentality thereof shall be disregarded in determining the volume of member and nonmember business transacted by such association." (Emphasis supplied)

■ ICA does not deal in farm products or farm supplies. It performs transportation as a for-hire carrier by motor vehicle in interstate commerce. Transportation is a service. In order to be accorded this exemption, the cooperative association must control and operate the vehicle, must be an association of farmers operated for their mutual benefit as producers, such transportation must be a farm business service, and the association must meet the third requirement of said section 1141j.

■ ICA is not a bona fide agricultural cooperative association and does not qualify as such. It is obvious to the Court that it exists in name only and is a fictitious sham. It was conceived and organized by defendants Coats and Adams who also own defendant G & E. These three own vehicles which they desire "to keep rolling." Both Coats and Adams had formerly been associated with similar purported cooperatives which have been found by the Commission and this Court to have been operating unlawfully. Machinery Haulers Assn. v. Agricultural Commodity Service, 86 M.C.C. 5, and I.C.C. v. Agricultural Cooperative Association, D.C., 34 F.R.D. 497. Coats and Adams, in order to lend an agricultural air to the cooperative, induced five farmers to act as incorporators, members, officers and directors of ICA. They were defendants Peters, Kuehl, Winser, Weibers and Johannsen. The testimony of these five clearly shows that they have no familiarity with the business and transportation involved. No transportation service is rendered for them individually. Only Coats and Adams are authorized to sign checks in the name of ICA. All matters of policy and detail are determined by Adams and Coats. Stockholders' and directors' meetings of ICA are held only when decided by Adams. The only interest of the five farmers in ICA is the $20.00 fee received by each for attending meetings.

■■ Defendant Western Iowa Pork, Inc. is a member of ICA. This raises the question whether it is eligible to such membership. It was incorporated in Iowa on August 7, 1961 and began operations as a hog slaughtering plant in April, 1963. It was formed as a civic

endeavor for the promotion of the industrial development of the Harlan, Iowa community. Its corporate stock is owned by persons in that area, many of whom are farmers or farm owners. However, each stockholder has as many votes as shares of common stock owned. There is no limitation upon the rate of dividend that may be paid. Clearly, Western Iowa Pork, Inc. was not incorporated as and does not qualify as an agricultural cooperative association. It is an ordinary commercial business corporation. All of the hogs slaughtered by it are purchased from outside sources. It does not raise or feed hogs. A cooperative association as defined in the Agricultural Marketing Act, as noted above, must be an organization in which member-*farmers* act together for their mutual benefit as producers of farm products or as purchasers of farm supplies and farm business services. As used in the statutory definition, the term "farmers" includes not only individuals, but also may include corporations, partnerships, and other business entities. Compare United States v. Maryland & Virginia Milk Pro. Ass'n, D.C., 167 F. Supp. 45, reversed on other grounds, 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880. Obviously, however, such persons, whether natural or corporate, must be engaged, to some extent at least, in a common pursuit—farming—in order to qualify for membership in a lawfully constituted agricultural cooperative. In other words, farming, is the denominator which binds such persons together in a common purpose. Those not engaged in agrarian activities, and having no agricultural production whatever, clearly are not eligible for membership. Machinery Haulers Assn. v. Agricultural Commodity Service, *supra.* Western Iowa Pork, Inc. is not a farmer and is not engaged in agricultural production.

The next consideration is the percentages of member versus nonmember business, as set forth in the third requirement of the Agricultural Marketing Act, *supra.* ICA has classified its revenue for the fiscal year ending August 31, 1964 as follows:

| | |
|---|---|
| Membership | $573,120.04 |
| Nonmembership | $512,543.17 |
| Total | $1,085,663.21 |

Of the membership revenue, $553,920.04, was received from defendant Western Iowa Pork, Inc. The Agricultural Marketing Act is administered by the Farm Credit Administration, and the statutory definition of a cooperative association, quoted above, constitutes the standard employed by that agency to determine whether an organization is eligible to borrow money from the Banks for Cooperatives. As a result, the interpretation placed by the Farm Credit Administration upon that statute and the regulations promulgated thereunder should be given considerable weight. Harrill v. Davis, 168 F. 187, 198, 22 L.R.A.,N.S., 1153. In determining eligibility for loans under the Marketing Act, that agency has prescribed the following in 6 CFR 70.1:

> In determining eligibility, all business transacted with members that are neither producers, nor cooperative associations as defined in the Agricultural Marketing Act, as amended, shall be deemed to be nonmember business.

The revenue received from Western Iowa Pork, Inc. must be classified as nonmembership revenue. As stated in Machinery Haulers Assn. v. Agricultural Commodity Service, supra, all revenues must be considered. Therefore, the revenues must be classified for that period as follows:

| | |
|---|---|
| Membership | $19,200.00 |
| Nonmembership | $1,066,463.21 |
| Total | $1,085,663.21 |

This is contrary to the third requirement of the Agricultural Marketing Act and is another reason why ICA is not a bona fide agricultural cooperative association.

Finally, the partial exemption afforded by section 303(b) (5) extends only to "motor vehicles controlled and operated by a cooperative association."

The evidence herein shows an attempt to create an agency relationship between ICA and G & E. The Court finds no substance to this arrangement and, as stated above, all operations and transportation, including vehicles and drivers, are controlled by defendants Coats and Adams. Such purported agency should be disregarded where its purpose is the assumption by the purported agent of the cooperative's functions with respect to the accomplishment of for-hire transportation in interstate commerce. The vehicles used in this transportation are not controlled and operated by ICA, although it purports to be the transporter.

## AGRICULTURAL COMMODITY EXEMPTION

Defendants contend that the transportation of fresh hog carcasses is exempt under Title 49, Section 303(b) (6), U.S.Code. The evidence is that live hogs are brought into the plant at Harlan, Iowa, where they are killed, the hair and insides are removed, and the carcass is split down the middle with the head and hooves intact and are then transported by defendants. The commodity transported is sometimes described on some of the shipping documents as fresh pork and dressed pork. In his testimony defendant Coats described the commodity transported as "meat" in a number of his answers. The Court finds that the dressed hog carcasses are fresh meat for which a degree of refrigeration is required.

Defendants rely upon Interstate Commerce Commission v. Allen E. Kroblin, D.C., 113 F.Supp. 599, involving eviscerated dressed poultry which was held to be an exempt agricultural commodity, not manufactured. That case was decided in 1953 and is not in point here. Since that time, Section 303(b) (6) has been amended to read:

"(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * or (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation: *Provided,* That the words 'property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)' as used herein shall include property shown as 'Exempt' in the 'Commodity List' incorporated in ruling numbered 107, March 19, 1958, Bureau of Motor Carriers, Interstate Commerce Commission, but shall not include property shown therein as 'Not exempt': *Provided further, however,* That notwithstanding the preceding proviso the words 'property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)' shall not be deemed to include frozen fruits, frozen berries, frozen vegetables, cocoa beans, coffee beans, tea, bananas, or hemp, and wool imported from any foreign country, wool tops and noils, or wool waste (carded, spun, woven, or knitted), and shall be deemed to include cooked or uncooked (including breaded) fish or shell fish when frozen or fresh (but not including fish and shell fish which have been treated for preserving, such as canned, smoked, pickled, spiced, corned or kippered products);"

Administrative Ruling No. 107 of March 19, 1958, above referred to, shows:

Meat and meat products, fresh, frozen or canned—not exempt—Cases 1 and 20

Cases 1 and 20 refer to Determination of Exempted Agricultural Commodities;

52 M.C.C. 511 and Frozen Food Express v. United States, D.C., 128 F.Supp. 374.

The Kroblin case, supra, determined whether dressed poultry was an "agricultural commodity" or a "manufactured product thereof." It was held to be the former. Here, the live hogs are ordinary livestock when they come into the slaughtering plant. "Ordinary livestock" is defined in Title 49, Section 20(11), U.S.Code. When the hogs are killed and processed as herein described, they are no longer ordinary livestock in that they are no longer alive. They have become meat, or as variously described, fresh pork, dressed pork, fresh hog carcasses, etc., having lost their exempt status as "ordinary livestock." What defendants have not properly considered, and what distinguishes our present situation from the Kroblin case, is that the parenthetical phrase "(not including manufactured products thereof)" in section 303(b) (6) does not modify "ordinary livestock" but relates only to "agricultural (including horticultural) commodities."

Even assuming that the hog carcasses, treated as meat, are considered to be an agricultural commodity as contended by defendants, their exemption as such has been settled by Congress by its amendment of section 303(b) (6).

Accordingly, the Court finds that the transportation of commodities, other than fresh fruits and vegetables, in interstate or foreign commerce by motor vehicle, for compensation, by ICA, G & E, George Coats and Elmer W. Adams, without appropriate authority from the Commission, is in violation of Title 49, Sections 303(c), 306(a) and 309(a), U.S. Code, and that an injunction should be issued against them as prayed. In view of the fact that fresh fruits and vegetables, when transported in motor vehicles which are not also carrying other property or passengers for compensation, do not require operating authority from the Commission by virtue of Section 303(b) (6) and since it appears that such transportation was performed, the injunction to be issued will not prohibit such service. An injunction should also be issued against Western Iowa Pork, Inc., to restrain it from aiding, abetting, inducing or procuring such unlawful transportation. The Court further finds that no injunction should be issued against defendants Peters, Kuehl, Winser, Weibers and Johannsen for the reason that their participation in the unlawful transportation was slight and it does not appear that a restraint for the future is necessary as to them.

The foregoing opinion will serve in place of findings of fact and conclusions of law, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

The Commission shall present an appropriate judgment.