Adolph G. HOFFMAN, Appellant,

v.

C. H. HALDEN, Dr. Donald E. Wair, Dr. G. F. Keller and Dr. F. Sydney Hansen, Appellees.

No. 15782.

United States Court of Appeals Ninth Circuit.

May 28, 1959.

Alexander, Buehner & Tilbury, Roger Tilbury, Portland, Or., for appellant.

Hart, Spencer, McCulloch, Rockwood & Davies, Cleveland C. Cory, Portland, Or., for appellee Keller.

Robert Y. Thornton, Atty. Gen., Peter S. Herman, Asst. Atty. Gen., State of Oregon, Salem, Or., for appellee Wair.

F. Leo Smith, Dist. Atty., Willis A. West, Chief Civil Deputy, County of Multnomah, Portland, Or., for appellees Halden & Hansen.

Before STEPHENS, Chief Judge, CHAMBERS, Circuit Judge, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

This appeal, in an action for violation of civil rights, presents three major questions:

(1) The sufficiency of the second amended complaint to state a cause of action;

(2) The right to immunity, if any, possessed by state executive officers, and

(3) The impact of the statute of limitations upon the alleged cause.

The defendants below, here appellees, moved to dismiss the second amended complaint of Hoffman on the grounds of, (1) failure to state a claim for relief, and (2) that the claim was barred by the statute of limitations of Oregon.[1]

The trial court entered a judgment of dismissal based on the first ground, failure to state a claim for relief. This appeal followed within the time allowed.

The second amended complaint is set forth in the margin.[2] The case apparent-

---

1. Appellee Keller also based his motion on the ground that the trial court had no jurisdiction of the subject matter of the claim. Appellee Wair also based his motion on the ground that Sections 1985 and 1986, Title 42 U.S.C.A. are unconstitutional. The question was not briefed or considered below. We therefore do not consider it.

2. "Second Amended Complaint

"Plaintiff for a second amended cause of action against defendants, and each of them, complains and alleges as follows:

"I.

"That plaintiff and all defendants are citizens of the United States of America and of the State of Oregon, and are domiciled and reside in the State and District of Oregon, within this judicial district; that this court has jursdiction under the provisions of U.S.C. Title 28, Sections 1331 and 1343.

"II.

"That this action arises under the United States Constitution and particularly Article I, Section 8, Article IV, Section 4, Amendments XIII and XIV, and the laws of the United States, Title 18 U.S.C. §§ 231, 241, 242; Title 28 U.S.C., §§ 1331 and 1343; Title 42 U.S.C. §§ 1981–1988; Title 52 [50] U.S.C. § 203.

"III.

"That at all times herein mentioned Dr. F. Sydney Hansen, defendant above named, was and still is the County Health Officer of Multnomah County, State of Oregon.

"IV.

"That at all times herein mentioned defendant C. H. Halden was and is a Deputy County Health Officer of Multnomah County, State of Oregon, and acted as an agent and employee of defendant Dr. F. Sydney Hansen.

"V.

"That at all times herein mentioned Dr. Donald E. Wair, defendant above named, was and still is Superintendent of the Oregon State Mental Hospital at Pendleton, Oregon.

"VI.

"That at all times herein mentioned defendant Dr. George F. Keller was and still is a duly licensed and practicing physician within the State of Oregon.

ly grows out of the fact that Hoffman was taken into custody on January 10, 1952 as a mentally ill person and again taken into custody on August 5, 1952

## "VII.

"That up to and including on or about the 18th day of June, 1956, in the State of Oregon, the defendants, and each of them, conspired to deprive plaintiff of the equal protection of the laws of Oregon, to wit, the laws in relation to due and established tribunals, their organization, procedure and course of justice, and particularly those relating to the commitment of persons alleged to be mentally ill; and further conspired to deprive plaintiff of those rights provided under the Constitution and laws of the United States and particularly those set forth in paragraph II herein, and conspired to impede, hinder, obstruct and defeat the due course and due process of law and justice in the State of Oregon; and further conspired to deprive plaintiff of the rights, privileges and immunities secured by the Constitution and laws of the United States extended to citizens of the United States and particularly those set forth in paragraph II herein; that all of said acts and those set forth throughout this complaint were committed by defendants, and each of them, while acting under color and pretense of the statutes, ordinances, customs and laws of the State of Oregon and were not committed in their individual capacity.

## "VIII.

"In furtherance of the object of the aforesaid conspiracy, defendants Halden and Hansen both acting under color and pretense of the statutes, ordinances, customs and laws of the State of Oregon and in wilful, malicious, intentional and discriminating misuse of their authority, that of their subordinates, and of other agencies of the State of Oregon, including the Circuit Court of Multnomah County, and Morningside Hospital, wilfully acting in concert with each other and with the other defendants, by themselves, their agents, servants and subordinates, each and all procuring, aiding and encouraging the other defendants, from January, 1952, up to and including on or about the 18th day of June, 1956, did purposely and systematically and intentionally discriminate against plaintiff and subjected him to inequality of treatment in the following particulars which were not privileged or compelled by law:

"1. Forcibly taking the plaintiff into custody on or about the 10th day of January, 1952, and again on or about the 5th day of August, 1952, without first informing plaintiff of the charges against him or of the nature of the proceedings with which he was confronted and a refusal to exhibit a citation which was in their custody;

"2. Wilful deprivation of plaintiff's rights to select a physician of his own choice and direct contravention of the laws of the State of Oregon;

"3. Wilful refusal on or about the 10th day of January, 1952, and again on the 5th day of August, 1952, to permit plaintiff to call or communicate with his counsel in time for said counsel to appear in his behalf despite the fact that he was under the custody and control of said defendants;

"4. Wilful failure to perform their duty to summon the District Attorney for Multnomah County or an Assistant District Attorney to be present at the hearing concerning plaintiff's competency and at a second hearing concerning his proposed commitment;

"5. Wilful refusal to permit plaintiff to summon witnesses in his own behalf and wilful refusal to give him an opportunity to prepare a defense to the charges against him;

"6. In intentionally confining plaintiff in an enclosure where persons charged with a crime were also incarcerated in direct violation of Oregon Law despite the fact that a suitable place for plaintiff's comfortable, safe and human confinement was available;

"7. In threatening, coercing and intimidating plaintiff to prevent plaintiff from making any objections to his illegal detention;

"8. In threatening and intimidating and coercing plaintiff from exercising and availing himself of due process and of the due course of the law;

"9. In wilful failure to act in good faith and pursuant to the mandate of State law. In the wilful violation of the order of the Circuit Court of Multnomah County, Oregon, issued on or about August 4, 1952, requiring that the plaintiff be brought before said Court but instead defendants forcefully took plaintiff to a place of detention;

"10. In the wilful refusal of defendants to communicate to the Circuit Court of Multnomah County, Oregon, that the order of the Court had been ignored and plaintiff was being held by them in a place of detention against his wishes;

"11. In falsely filing a return of citation stating that they had followed the order of the Circuit Court of Multnomah County as set forth above;

and incarcerated until October 23, 1952, at the Oregon State Hospital for the mentally ill. There is reference to detention in Morningside Hospital but no other information about this hospital is pleaded.

"12. In intentionally suppressing the facts regarding plaintiff's illegal detention from the proper authorities and falsely assuring plaintiff that his liberty would not be impaired in any way by his attendance at the hearing conducted on or about January 10, 1952, despite the fact that said defendants were fully conversant with the purpose of said hearing;

"13. In wilfully participating without objection or remonstrance of any kind despite the fact that it was within their power to remonstrate in the hearing conducted on or about January 10, 1952, as aforesaid which hearing was wholly devoid of due process and which was convened under statutes unconstitutional and void;

"14. In causing all of the money and property in plaintiff's possession to be forcefully extracted from his person on or about August 5, 1952, thereby depriving plaintiff of the means of communicating or employing counsel or any other person to appear in his behalf;

"15. By directing plaintiff to remain silent and refuse to testify in his own behalf at the hearing which was held on or about the 10th day of January, 1952, in the Circuit Court of Multnomah County and by also informing plaintiff that it was unnecessary for him to obtain legal representation despite the fact that defendants knew that if plaintiff were not permitted to summon counsel that no one would appear at said hearing to protect or represent his interests;

"16. By assisting and forcefully removing plaintiff from the Courtroom on January 10, 1952, despite the fact that said defendants knew that various witnesses were preparing to testify adversely to plaintiff and that he would be given no opportunity to confront or hear the testimony of said witnesses;

"17. In refusing to assist in the restoration of the money and property forcibly seized from plaintiff's person on or about the 5th day of August, 1952;

"18. In the wilful coercion and intimidation of plaintiff to prevent him from exercising his rights under the Constitution of the United States and the laws of the State of Oregon.

"IX.

"In furtherance of the objects of the aforesaid conspiracy defendant, Dr. George F. Keller, acting under color and pretense of the statutes, ordinances, customs and laws of the State of Oregon and in wilful, malicious, intentional and discriminating misuse of his authority and that of other agencies of the State of Oregon including the Circuit Court for Multnomah County and Morningside Hospital and wilfully acting in concert with the other defendants, each and all procuring, aiding and encouraging the other defendants, from January, 1952 up to and including on or about the 18th day of June, 1956, did purposely and systematically and intentionally discriminate against plaintiff and subject him to inequality of treatment in the following respects which were neither privileged nor compelled by law:

"1. That although said physician had been specifically ordered by the Circuit Judge of Multnomah County, Oregon, to make an adequate medical and psychological examination of plaintiff as a preliminary and as an adjunct of the hearing conducted on or about the 10th day of January, 1952, concerning plaintiff's competency, said physician wholly failed and refused to comply with said order and instead made only a superficial examination;

"2. That despite the fact that said physician realized that he did not have sufficient data to form an intelligent judgment concerning plaintiff's mental competency he nevertheless certified under oath to the Circuit Court that the plaintiff was incompetent despite the fact that a complete examination would have revealed that the contrary was the case;

"3. By intentionally signing a certificate containing information allegedly gathered concerning plaintiff by defendant Dr. Keller, on his subordinates, although he knew this information was extremely limited and he had made no effort to verify the same;

"4. By signing and verifying a statement concerning the plaintiff which contained numerous inaccuracies;

"5. By refusing and ignoring plaintiff's request at the time of said hearing that he be given an adequate mental examination as a necessary preliminary to any adjudication concerning his competency;

"6. By suppressing the facts regarding plaintiff's illegal detention from the proper authorities and participating in a hearing without remonstrance or objections of any kind despite the fact that it was within the power of said defendant to object when it became apparent

## I.

### *The District Court has jurisdiction of the Cause.*

 We inquire first as to the jurisdiction of the district court over the subject matter of the cause. The second amended complaint bases jurisdiction on Title 28 U.S.C.A. §§ 1331 and 1343. It alleges the action arises under the U. S. Constitution, Art. I, Sec. 8; Art. IV, Sec. 4, and amendments XIII and XIV;

that said hearing was wholly lacking in due process and plaintiff was being denied the privileges and immunities and the equal protection of the laws available to all citizens under the Constitution of the United States;

"7. In failing to remonstrate or object in any fashion despite the fact that it was within his power to object or remonstrate when plaintiff was given no opportunity whatever to cross-examine witnesses, was excluded from hearing the testimony of said witnesses, was given no opportunity to summon counsel or representative in his behalf or to testify, in any way except for a few preliminary statements, and that the District Attorney of Multnomah County was not present despite the statutory mandate to the contrary;

"8. By wilfully participating without objection or remonstrance whatever despite the fact that it was in his power to remonstrate or object at a hearing which was convened under a statute unconstitutional and void;

"9. By refusing to make an examination of plaintiff while he was held at Morningside Hospital despite the fact that it was his duty to do so on or about the 5th day of August, 1952;

"10. By refusing to immediately release plaintiff while he was held at said Morningside Hospital since he was apprised of the fact that plaintiff had been confined under proceedings wholly void;

"11. By refusing to direct that defendants Halden and Hansen deliver plaintiff to the Circuit Court of Multnomah County rather than to Morningside Hospital after he knew either personally or by and through his agents acting within the scope of their employment that defendants Halden and Hansen had wilfully disobeyed the order of the Court directing that said plaintiff be delivered to the Circuit Court rather than to Morningside Hospital on or about August 5, 1952.

"X.

"In furtherance of the object of the aforesaid conspiracy, defendant Dr. Donald E. Wair, acting under color and pretense of the statutes, ordinances, customs and laws of the State of Oregon and in wilful, malicious, intentional and discriminating misuse of his authority, that of his subordinates and other agents of the State of Oregon, including the Circuit Court for Multnomah County wilfully acting in concert with the other defendants, by themselves, their agents, servants, and subordinates, each and all procuring, aiding and encouraging the others from on or about August 5, 1952, up to and including on or about the 18th day of June 1956, in the State of Oregon:

"1. Willfully and intentionally forcefully restraining plaintiff from leaving the Oregon State Hospital, Pendleton, Oregon, despite the fact that he knew that defendant was being held illegally;

"2. Willfully and intentionally forcefully restraining plaintiff from leaving the Oregon State Hospital, Pendleton, Oregon, despite that fact that he knew plaintiff was not suffering from mental illness;

"3. By suppressing the facts with regard to plaintiff's illegal detention from the proper authorities;

"4. By refusing to permit plaintiff to correspond or communicate with appropriate authorities, except to a limited extent;

"5. In threatening, coercing and intimidating plaintiff in an effort to force him to dismiss a civil action which plaintiff had filed in the Circuit Court of Multnomah County, Oregon.

"XI.

"That the aforesaid acts on the part of the defendants and each of them, resulted in the confinement of plaintiff to the Oregon State Hospital, Pendleton, Oregon, from on or about the 5th day of August 1952, to and including on or about the 23rd day of October, 1952, against his express wishes and to his great embarrassment and mental anguish and caused him to lose his wages in the sum of $1200.00 for that period of time.

"XII.

"That as a result of the foregoing acts of the defendants, and each of them, plaintiff was harassed, intimidated, coerced, feared serious bodily harm, and suffered grievous humiliation, indignity and nervous shock, and was deprived of his constitutional rights and his rights under the laws of the United States as set forth hereinabove to his damage in the sum of $100,000.00.

Title 18 U.S.C.A. §§ 231,[3] 241, 242; and Title 42 U.S.C.A. §§ 1981–1988.

Title 42 U.S.C.A. §§ 1981–1988 contains the Civil Rights Statutes which may be the basis of a civil cause of action. Title 18 U.S.C.A. §§ 241 and 242 are criminal sections pertaining to civil rights and provide only criminal sanctions. They are only of passing interest.

Title 28 U.S.C.A. § 1343 expressly grants jurisdiction to the district court in civil actions for violation of civil rights. § 1331 grants jurisdiction if the cause arises under the Constitution or laws of the United States and the prayer exceeds $3,000.

There is considerable doubt and confusion in the application of the Civil Rights Statutes throughout the circuits. A panel of this court in Agnew v. City of Compton, 9 Cir., 1956, 239 F.2d 226, has painstakingly and ably analyzed various of the sections. To the extent that case is applicable, we therefore follow it.

We hold that the district court had jurisdiction of the cause, Agnew v. City of Compton, supra. This court has jurisdiction of the appeal.

## II.

### *The Second Amended Complaint states a cause of action.*

In considering the question as to whether the second amended complaint states a cause of action, we do so without reference to the application of the statute of limitations or the problem of immunity of state executive officers. We hereafter consider these problems.

The second amended complaint purports to allege a conspiracy based on § 1985, subdivisions (2) and (3), Title 42 U.S.C.A., and also on § 1983 of the same title.[4]

After reviewing scores of cases, we are of the view that the effect and scope

---

"XIII.

"Defendants, and each of them, in the acts above stated acted wantonly, maliciously and arbitrarily by virtue whereof plaintiff is entitled to punitive damages in the sum of $100,000.00.

"Wherefore, plaintiff prays for judgment against the defendants, and each of them, for the sum of $101,200.00 as actual damages; and the sum of $100,000.-00 as punitive damages; and for his costs and disbursements incurred herein.

"Roth & Tilbury,

/s/ Roger Tilbury,

Of Attorneys for Plaintiff."

3. There is no Section 231 in Title 18 U.S. C.A.

4. Sec. 1983, Title 42 U.S.C.A.

"Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

Sec. 1985, Title 42 U.S.C.A.

"Conspiracy to interfere with civil rights —Preventing officer from performing duties. * * *

"Obstructing justice; intimidating party, witness, or juror.

"(2) * * * or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

"Depriving persons of rights or privileges

"(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States,

of the Civil Rights Statutes must be gauged by the reported cases after about 1939. In considering this problem we particularly rely on Agnew v. City of Compton, supra, and the decisions of the Supreme Court, though few in number, which have considered the Civil Rights Statutes since that date.

Hague v. C.I.O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, was an important case in giving life and content to the Civil Rights Act. An injunction under § 43, old Title 8 U.S.C.A. (now § 1983, Title 42, U.S.C.A.) was sustained against municipal officials who interfered with union meetings. Justice Stone concurring stated (307 U.S. at page 526, 59 S.Ct. at page 469):

"It will be observed that the cause of action, given by the section in its original as well as its final form, extends broadly to deprivation by state action of the rights, privileges and immunities secured to persons by the Constitution. It thus includes the Fourteenth Amendment and such privileges and immunities as are secured by the due process and equal protection clauses, as well as by the privileges and immunities clause of that Amendment * *".

United States v. Classic, 1941, 313 U. S. 299, at page 326, 61 S.Ct. 1031, at page 1043, 85 L.Ed. 1368, defined "color of state law." "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." [5]

In Snowden v. Hughes, 1943, 321 U. S. 1, 64 S.Ct. 397, 88 L.Ed. 497, the court had before it an action for damages under old Title 8 U.S.Code, §§ 41, 43 and 47(3) (now §§ 1981, 1983 and 1985(3), Title 42 U.S.Code Annotated). The court said at page 7 of 321 U.S., at page 400, of 64 S.Ct., "There is no allegation of any facts tending to show that in refusing to certify petitioner as a nominee, the Board was making any *intentional or purposeful discrimination* between persons or classes * * *". And at page 8 of 321 U.S., at page 401 of 64 S.Ct., "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of *intentional or purposeful* discrimination * * *". [Emphasis supplied.]

The teaching of the case is therefore that it must be alleged and proved that the purpose of the acts complained of was to discriminate between persons or classes of persons.[6] Agnew v. City of Compton, supra, so states, 239 F.2d at page 231. Note in Cobb v. City of Malden, 1 Cir., 1953, 202 F.2d 701, 707, Chief

the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. R.S. § 1980."

5. The impact of United States v. Classic, 1941, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, was significant. Although it was a case involving the criminal portions of the Civil Rights Act, viz. §§ 19 and 20 of the Criminal Code, then old Title 18 U.S.C.A. §§ 51 and 52 (now Title 18 U.S.C.A. §§ 241 and 242) we think it had an effect on civil cases. The case held that § 20 (now § 242, Title 18 U.S.C.A.) "authorizes the punishment of two different offenses. The one is willfully subjecting any inhabitant to the deprivation of rights secured by the Constitution; the other is willfully subjecting any inhabitant to different punishments on account of his color or race, then are prescribed for the punishment of citizens." (313 U.S. at page 327, 61 S.Ct. at page 1043).

Prior to United States v. Classic there had been a tendency in the courts to look upon the Civil Rights Act as intended only to apply to class legislation or acts discriminatory towards negroes. Thus the statement appears in Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184, "The prohibition against 'denial of the equal protection of the law' was to prevent class legislation or action." (at page 187).

6. It will be noted that the decision did not consider old Title 8 U.S.C.A. § 47(2), now § 1985(2), Title 42 U.S.C.A. dealing with conspiracies to impede justice.

Judge Magruder's concurring opinion stating the need for "this crucial state of mind on the part of the defendants," to-wit, a realization "that they were subjecting plaintiffs to harm by an unconstitutional impairment of the obligation of their contracts with the City." (at page 707).

It is interesting in this respect to compare Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, a criminal case, where there was charged a violation of the then existing Title 18 U.S.Code, § 52, (now 18 U.S.C.A. § 242) and a conspiracy to violate the section under the general conspiracy section. The court pointed out that the Congress in 1909 had added the word "willfully" but that to constitute the offense, more than what would be the ordinary requirement of proof of specific intent was required. The court said at page 107 of 325 U.S., at page 1038 of 65 S.Ct.: "But in view of our construction of the word 'willfully' the jury should have been further instructed that it was not sufficient that petitioners had a generally bad purpose. To convict it was necessary for them to find that petitioners had the purpose to deprive the prisoner of a constitutional right, e. g. the right to be tried by a court rather than by ordeal. * * *".

Thus, in two cases, one involving the criminal statute and one involving the civil statute, the court reached similar results which we can equate, namely that a specific intent to violate one's constitutional rights was required under the criminal statutes and conduct which was "purposefully discriminating," as to such rights was required under the civil statute.[7]

Passing to Collins v. Hardyman, 1951, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253, a civil action under old Title 8 U.S.Code, § 47(3) (now § 1985(3) Title 42 U.S. C.A.) no officers of the State were made defendants and although the action did not purport to rely upon old Title 8, § 43, present § 1983, Title 42 U.S.C.A. which expressly required action under color of State authority, nevertheless the court in substance read the same requirement into § 47(3) (now § 1985(3) Title 42 U.S.C.A.). The court said at page 661 of 341 U.S., at page 941 of 71 S.Ct., "* * * it is clear that this statute does not attempt to reach a conspiracy to deprive one of rights, unless it is a deprivation of equality, of 'equal protection of the law,' or of 'equal privileges and immunities under the law.'". The court points out that the acts complained of were private acts, without even an attempt to influence or interfere with the law. "Such private discrimination is not inequality before the law unless there is some manipulation of the law or its agencies to give sanction or sanctuary for doing so." The rights of plaintiffs *under the laws* and to *protection of the laws*, remained untouched * * *". (341 U.S. at page 661, 71 S.Ct. at page 942). [Emphasis in opinion].

We think it is now clear that an action under any of the Civil Rights statutes must allege acts done under color of state law,[8] even though § 1985, Title 42 U.S.C.A. does not expressly contain this requirement. It should be noted

7. Accord, Burt v. City of New York, 2 Cir., 1946, 156 F.2d 791, where Judge L. Hand reaches a similar conclusion.

8. Baldwin v. Morgan, 5 Cir., 1958, 251 F. 2d 780;
 Davis v. Foreman, 7 Cir., 1958, 251 F.2d 421, 422;
 McShane v. Moldovan, 6 Cir., 1949, 172 F.2d 1016;
 Shematis v. Froemke, 7 Cir., 1951, 189 F.2d 963, 964;
 Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240;

Schatte v. International Alliance etc., 9 Cir., 1950, 182 F.2d 158, 166.
 See Hardyman v. Collins, D.C.S.D.Cal. 1948, 80 F.Supp. 501 and cases collected by Judge Yankwich. The case was reversed by the Ninth Circuit in 183 F.2d 308 which was in turn reversed by the Supreme Court, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253.
 Contra: Miles v. Armstrong, 7 Cir., 1953, 207 F.2d 284, at page 286 states there can be a conspiracy under § 1985 (3) by private persons without an allegation as to color of law.

that § 1985, Title 42 U.S.C.A. sets forth various civil conspiracies with only two of which we are here concerned. Subd. (2) defines the conspiracy to *impede justice* with intent to deny a *citizen* the equal protection of the law and Subd. (3) defines the conspiracy to *deprive* a *person* or class of persons of the equal protection of the law or equal privileges and immunities under the law. The two conspiracies are not identical. The first, § 1985(2) is narrower in one respect by its limitation to "citizen," and its failure to refer to "privileges and immunities." It probably is broader than § 1985(3) in its statement of purpose "to impede" etc., the due course of justice. The last portion of § 1985(3) applies to both conspiracies in its reference to overt acts and liability of all conspirators.

### Elements of a Cause of Action.

▮▮ It thus appears that under § 1985(2), Title 42 U.S.C.A. the elements of a cause of action are (1) that defendants conspired; (2) that the purpose of the conspiracy was to impede or hinder, or obstruct or defeat the due course of justice in a state or territory; (3) with the purposeful intent to deny to a citizen the equal protection of the law (Snowden v. Hughes, supra), and (4) that the acts complained of were done under color of state law or authority (Collins v. Hardyman, supra); (5) (the requirement of § 1985(3), Title 42 U.S.C.A.) that by acts done in furtherance of the conspiracy the plaintiff was injured in his person or property *or* was deprived of having and exercising a right or privilege of a citizen of the United States.

Under § 1985(3), Title 42 U.S.C.A. the elements of a cause of action are (1) that defendants conspired, (2) that the purpose of the conspiracy was to deprive plaintiff of equal protection of the laws or equal privileges and immunities under the law, (3) a purposeful intent to discriminate (Snowden v. Hughes, supra), and (4) that defendants acted under color of State law or authority (Collins v. Hardyman, supra); (5) the requirement of § 1985(3) that by acts in furtherance of the conspiracy plaintiff was injured in his person or property *or was* deprived of having and exercising a right or privilege of a citizen of the United States.[9]

### Can there be an action for civil conspiracy to violate § 1983, Title 42 U.S.C.A.?

There is no statutory provision that there can be a conspiracy to violate § 1983, Title 42 U.S.C.A. nor does the specific requirement as to overt acts in § 1985(3), Title 42 U.S.C.A. apply expressly to § 1983.

▮ It should be axiomatic that what one person can do, two or more persons can do jointly or in concert. This is in reality all that a civil conspiracy is [10]— concerted action or a sort of civil partnership in the commission of the injury whereby one may act for his partner and both be bound.

▮ We cannot find a case expressly, stating that there may be such a civil conspiracy based on § 1983, Title 42 U.S. C.A. but we think the cases cited in the margin lend support.[11]

9. See Collins v. Hardyman, supra, 341 U.S. at pages 659–660, 71 S.Ct. 937, as to the difference between the purpose of the conspiracy and the content of the overt acts.

10. Prosser, Law of Torts, 2nd Ed. (1955) pp. 234–235.

11. In Lewis v. Brautigam, 5 Cir., 1955, 227 F.2d 124, at pages 127–128, 55 A.L.R.2d 505, the court said:

"The defendants would have us treat the complaint as filed strictly under the statute providing against conspiracy to interfere with civil rights, 42 U.S.C.A. § 1985 * * *

"We do not think, however, that we are required so to treat the complaint. It charges that the conspiracy was actually carried into effect. If, thereby, the plaintiff was deprived of any rights, privileges or immunities secured by the Constitution and laws, the gist of the action may be treated as one for the deprivation of such rights under the broader civil rights statute, 42 U.S.C.A. § 1983 (footnote 2, supra). See Watkins v.

We conclude that there may be stated a civil cause of action of conspiracy based on § 1983, Title 42 U.S.C.A.[12] or a cause alleging that the defendants acting jointly or in concert damaged plaintiff pursuant to § 1983.

■ Agnew v. City of Compton, supra, holds that an action based on § 1983 is not limited to deprivation of due process, but extends also to denial of equal protection, citing Hague v. C.I.O., 307 U.S. 496, 526, 59 S.Ct. 954, 83 L.Ed. 1423. We agree.[13]

■ Thus a cause of action for conspiracy or joint action based on § 1983, is broader than either of the two con-

---

Oaklawn Jockey Club, 8 Cir., 183 F.2d 440, 441. * * *"

See: Valle v. Stengel, 3 Cir., 1949, 176 F.2d 697, "aiding and abetting" (at page 702); Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240, "adopting a conspiracy" (at page 247); Baldwin v. Morgan, 5 Cir., 1958, 251 F.2d 780, "acting together," "aiding and abetting" (at page 788); Flemming v. South Carolina Elec. & Gas Co., 4 Cir., 1955, 224 F.2d 752, 753.

12. Contra: Jennings v. Nester, 7 Cir., 1955, 217 F.2d 153, 154, relying on Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184 referred to below, in note 13.

13. Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184; rehearing denied 100 F.2d 1006, gives us some concern. In it the court said, at page 186:

"The federal statute relied upon (8 U.S.C.A. §§ 43, 47) was enacted in 1871 to enforce the rights granted by the Thirteenth and Fourteenth Amendments to the Constitution, U.S.C.A.Const. Amends. 13, 14. We set out in the margin the clauses of 8 U.S.C.A. § 47 deemed applicable by the plaintiff. The question is then whether or not a conspiracy to secure a conviction of a criminal offense in a court having jurisdiction thereof and of the defendant by knowingly using perjured testimony to convict an innocent person, is a conspiracy for the purpose of impeding the due course of justice in an attempt to 'deny to any citizen the equal protection of the laws.' It is only in case of a conspiracy to effectuate such a purpose that one damaged in his person or property, or deprived of his rights as a citizen of the United States, is entitled to maintain an action for damages in the federal courts under the statute. (8 U.S.C.A. § 47, supra). No such purpose was involved in the alleged conspiracy in the case at bar. Appellant was subjected to no greater hazard than any other individual in the state, namely, the hazard of being prosecuted for a crime and convicted by false testimony, and if the prosecuting officer of the county were sufficiently corrupt to use his high office for the purpose of convicting innocent people by perjured testimony, all the citizens within his jurisdiction would be subject to the same hazard.

"It is clear that conspiracy to deny the defendant due process of law is not a conspiracy to deny a person 'equal protection of the law,' within the meaning of that phrase as used in the Fourteenth Amendment, U.S.C.A.Const. Amend. 14, and the act under consideration (8 U.S. C.A. § 47, supra). The two propositions are quite distinct. Tinsley v. Anderson, 171 U.S. 101, 106, 18 S.Ct. 805, 43 L.Ed. 91. The prohibition against 'denial of the equal protection of the law' was to prevent class legislation or action. It follows that the plaintiff has failed to state a cause of action within the terms of the federal statute (8 U.S.C.A. § 47, supra) upon which he relies. * * *"

The case in several places refers to the fact that the plaintiff relied upon 8 U.S. C.A. §§ 43 and 47. However, the decision set forth above would seem to rest on 8 U.S.C.A. § 47 only.

The case has been cited by various other circuits. In Jennings v. Nester, 7 Cir., 1954, 217 F.2d 153, the case is cited for the proposition "Section 1983 does not mention conspiracy, while Section 1985 does. Therefore the Act creates a cause of action for a conspiracy to deny equal protection but not for a conspiracy to deny due process. * * *", (at page 154). Eaton v. Bibb, 7 Cir., 1954, 217 F.2d 446 again cites it apparently for a similar proposition. Laughlin v. Rosenman, 1947, 82 U.S.App.D.C. 164, 163 F.2d 838, likewise cites it as a basis for sustaining the dismissal of the second count. In that case, which was based upon 8 U.S.C.A. §§ 43 and 47, the D.C. Circuit did not attempt to summarize what the case stood for, but quoted the portion of it we have quoted herein. Though cited in other circuits for a variety of propositions the case has only been cited on three occasions by the Ninth Circuit.

Judge Orr in Schatte v. International Alliance etc., 9 Cir., 1950, 182 F.2d 158, at page 166, cites Mitchell v. Greenough (supra) with "CF",

spiracies (§ 1985(2) and (3) referred to above.

 The elements of such a cause of action are, (1) that defendants conspired or acted jointly or in concert; (2) that defendants acted under color of state law or authority; (expressly set forth in statute) (3) a discriminatory intent (Snowden v. Hughes, supra); (4) that defendants subjected plaintiff (citizen or noncitizen) to a deprivation of a right, privilege or immunity (due process, equal protection of the law or equal privileges and immunities); (5) that overt acts were done pursuant to the conspiracy which damaged plaintiff.[14]

### "Conclusionary allegations."

 It is true that general conclusionary allegations unsupported by facts have consistently been rejected as insufficient to constitute a cause of action under the Civil Rights Act, Agnew v. City of Compton, supra, 239 F.2d at page 231.

Various Circuits have rejected in civil rights cases, "the mere allegations of conspiracy, fraud or malice;" and disregarded " * * * as mere conclusions, the loose and general, the factually unsupported, characterizations of the complained of acts of the defendants, as malicious, conspiratorial, and done for the purpose of depriving plaintiffs of their constitutional rights * * * ".[15] Agnew v. City of Compton, supra, 239 F.2d at page 231 refers in footnote 11 to "opprobrious conclusions * * * 'spite-

ful, malicious, wrongful, oppressive. * * *' " as adding nothing and correctly cites Snowden v. Hughes, supra, 321 U.S. at page 10, 64 S.Ct. at page 402. It will be noted however, that in Agnew and Snowden, supra, the court does not include the words "conspiracy" or "conspiratorial."

As quoted above from the second amended complaint, Hoffman set forth the purpose of the conspiracy as one "to deprive plaintiff of the equal protection of the laws and of those rights provided under the constitution and laws of the United States;" and "to impede, hinder, obstruct and defeat the due course and due process of law and justice" in Oregon; and "to deprive plaintiff of the privileges and immunities secured by the constitution and laws of the United States." As to each defendant, it is alleged he "did purposely and systematically and intentionally discriminate against plaintiff and subjected him to treatment in the following particulars which were not privileged or compelled by law * * *".

Clearly the plaintiff is alleging the "purposeful discrimination" required under the cases, Snowden v. Hughes, supra, 321 U.S. at pages 7, 8, 10, 64 S.Ct. at pages 400, 401, 402; Agnew v. City of Compton, supra, 239 F.2d at page 233.

 Hoffman also alleges the "defendants conspired." In what other way can plaintiff plead conspiracy? Certainly he is not required to list the place and date of defendants' meetings and the

---

"The civil remedies provided by the Civil Rights Acts are not a means of obtaining redress from errors in official proceedings and decisions which are untainted by conspiracy or fraud. CF Bottone v. Lindsley, 10 Cir., 1948, 170 F.2d 705; Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184."

In Dinneen v. Williams, 9 Cir., 1955, 219 F.2d 428, Judge Fee correctly cites the case for the principle that where there is a substantial claim of federal rights, jurisdiction is not defeated by failure of the plaintiff to state a cause of action.

Judge Lemmon in In re Sawyer, 9 Cir., 1958, 256 F.2d 553, cites the case in his dissent (at page 554) for the rule that the right to practice law is not a federally secured right.

14. This is true even though the latter portion of Sec. 1985(3) does not specifically apply to Sec. 1983. We discuss later the need and function of the overt acts.

15. McGuire v. Todd, 5 Cir., 1952, 198 F. 2d 60, at page 63; Yglesias v. Gulfstream Park Racing Ass'n, 5 Cir., 201 F.2d 817, at page 818; Ortega v. Ragen, 7 Cir., 1954, 216 F.2d 561, at page 563. See Dunn v. Gazzola, 1 Cir., 1954, 216 F.2d 709, 711.

summary of their conversations. He should not be required here to plead his evidence.

Hoffman also alleges defendants acted "under color and pretense" of the statutes and laws of Oregon and that the acts complained of "were not committed in their individual capacities." The enumeration of acts complained of as to each defendant alleges that the acts were "in furtherance of the conspiracy" and under "color and pretense of the statute * * *".

We are aware of the experiences of the trial judges that an astonishing few of the actions for violations of civil rights have any real merit when explored and tried on the merits and we sympathize with the desire of the trial judges to expediently dispose of these cases. We question some of the broad language used in the decisions concerning "conclusionary allegations." We think the validity of the complaint at the pleading stage cannot be disposed of on the basis of the presence of so-called "conclusionary" allegations of "conspiracy" or "conspiring" of "discriminatory intent" or of "acting under color of state law or authority" but that as to these elements of a cause of action such allegations are proper and necessary. However, attention should be directed to the nature of the overt acts alleged [16] to determine if a cause of action is stated. This thesis we now explore.

### The Function of Overt Acts in a civil conspiracy case.

In a criminal conspiracy, the conspiracy is the gist of the crime [17] and the function of the overt act is to show that the agreeing or conspiring has progressed from the field of thought and talk into action. It completes the offense.[18]

In a civil conspiracy, the conspiracy itself is not a cause of action, without overt acts, because again it is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage. Accordingly, the cases hold that the damage in a civil conspiracy flows from the overt acts and not from the conspiracy.[19]

Therefore, the certainty we look for in a proper complaint under the Civil Rights Statutes, is not in the general allegations of conspiracy, purpose, intent and color of authority but the certainty and substance in the particular acts which are alleged to have caused damage. The real question is whether or not the second amended complaint, in addition to the general allegations referred to above, sets forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.

If sufficient allegations appear of the acts of one defendant among the conspirators, causing damage to plaintiff, and the act of the particular defendant was done pursuant to the conspiracy, during its course, in furtherance of the objects of the conspiracy, with the requisite purpose and intent and under color

16. This was Judge Hamley's approach in Agnew v. City of Compton, supra.

17. United States v. Falcone, 1940, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128; Black v. United States, 9 Cir., 1958, 252 F.2d 93, 94; Toliver v. United States, 9 Cir., 1955, 224 F.2d 742, 744.

18. Fiswick v. United States, 1946, 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196; Hudspeth v. McDonald, 10 Cir., 1941, 120 F.2d 962, 965; certiorari denied 314 U.S. 617, 62 S.Ct. 110, 86 L.

Ed. 496, rehearing denied 325 U.S. 892, 65 S.Ct. 1181, 89 L.Ed. 2004.

19. Collins v. Hardyman, 1951, supra, 341 U.S. 651, 659, 71 S.Ct. 937, 95 L.Ed. 1253; Agnew v. City of Compton, 9 Cir., 1957, 239 F.2d 226, 232; Suckow Borax Mines Consol. v. Borax Consol. Ltd., 9 Cir., 1950, 185 F.2d 196, 208; Orloff v. Metropolitan Trust Co., 1941, 17 Cal.2d 484, 110 P.2d 396; Prosser, Law of Torts, 2d Ed. (1955) p. 235, and cases cited in note 39.

of state law, then all defendants are liable for the acts of the particular defendant under the general principle of agency on which conspiracy is based.[20]

### Proximate causation.

 There are various cases which point out that certain acts preliminary to judicial decision or action can not be the basis for a claim under the Civil Rights statutes. These cases are essentially cases on proximate causation. Whittington v. Johnston, 5 Cir., 1953, 201 F.2d 810, certiorari denied 346 U.S. 867, 74 S.Ct. 103, 98 L.Ed. 377, often cited, states at page 811:

"It is a non sequitur to say that merely by instituting the lunacy proceeding, the defendants 'caused' plaintiff to be deprived of her right to due process within the meaning of 8 U.S.C.A. § 43. If there was any denial of due process, the efficient cause thereof was the omission of the state probate judge to give notice of the proceeding. That failure is not attributable to these defendants. Whether or not notice should be given is committed by the Alabama statute to the discretion of the probate judge. These defendants had no duty in that behalf. They simply instituted the lunacy proceeding as the Alabama statute authorized them to do, and left the conduct thereof wholly to the discretion of the probate judge whose duty and function it was to give any necessary notice." [21]

 With these cases in mind we would reason as follows: In a Civil Rights conspiracy case, the injury and damage must flow from the overt acts. Where the gravamen of the injury complained of is commitment to an institution by court order, this order of the court, right or wrong, is ordinarily the *proximate cause* of the injury. Various preliminary steps occur before the order is made. These preliminary steps may range from such matters as filing of petitions to the various clerical and procedural activities which lead to the order. In the ordinary case, the order is made after a hearing in court or after consideration by the court of the supporting documents and evidence. Therefore, the various preliminary steps would not cause damage unless they could be said to be the proximate cause of the injury. In the usual case, the order of the court would be the proxi-

20. Hitchman Coal & Coke Co. v. Mitchell, 1917, 245 U.S. 229, 249, 38 S.Ct. 65, 62 L.Ed. 260; United States v. Olweiss, 2 Cir., 1943, 138 F.2d 798, 799–800, certiorari denied 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047.

21. Kenny v. Hatfield, D.C.W.D.Mich.1955, 132 F.Supp. 814, was an action under the Civil Rights statute. Robinson, one of the defendants, prepared the petition which was the first step in the proceedings which resulted in plaintiff's commitment to the State hospital. The court quoted from Whittington v. Johnston, supra, and held that no cause of action was stated against the defendant Robinson.

On appeal the case was affirmed (6 Cir., 1956) sub nom, Kenney v. Fox, 232 F.2d 288. The court at page 290 stated that "Robinson, a private practitioner, in preparing the papers filed as the first step in the proceedings resulting in Kenney's commitment * * * was not amenable to an action based on the civil rights statute."

In Cuiksa v. City of Mansfield, 6 Cir., 1957, 250 F.2d 700, at page 704, the court held, "The actions of the constable in initiating the prosecution and in testifying did not deprive the appellant of any constitutional right. Nor is he responsible for the subsequent actions and rulings of the judge," citing Whittington v. Johnston (supra).

In Dunn v. Gazzola, 1 Cir., 1954, 216 F.2d 709, Gazzola served plaintiff with a notification to appear and Marron served her with a complaint. The court said these actions "subjected the plaintiff to trial, but not to an 'unfair' trial. The control of the trial was exclusively within the province of the court * * * other allegations against the officers with regard to their failure to give proper notice of trial or to advise the plaintiff of her right to counsel are even more frivolous; the court, not the arresting officer, has the duty to give an accused whatever notice and whatever advice are required." (at page 711).

mate cause and the various preliminary steps would be remote causes of any injury from imprisonment or restraint under the court order.

We are not saying that there could not be situations where a judge was so deceived and hoodwinked by proceedings brought before him that certain of these preliminary acts might not raise themselves to the status of a proximate cause of an injury, notwithstanding the intervening order of the court. There might be situations where the action of the court became in substance, merely a conduit for the wrongful action which preceded.[22]

### Sufficiency of the overt acts.

The laws of Oregon of which we take judicial notice, provide for a Board of Health for each city and county of the state, O.C.L.A. 99–201; and that each Board shall select as secretary a person licensed by the State Board of Medical Examiners who shall be the Health Officer, O.C.L.A. 99–201. Former O.C.L.A. 99–201, now O.R.S. 431.440, provides that "all county and city health officers shall possess the powers of constables or other peace officers in all matters pertaining to the public health."

Chapter 571 of the Oregon Laws of 1949 (now codified in O.R.S. 426.110–426.130) relates to apprehension, examination and commitment of mentally ill persons. Sec. 3 provides for the appointment by a Judge of two physicians, or one physician in counties having a population of 10,000 or less, who may be the county health officer. Sec. 4 provides the procedure for the appointed physicians to examine and report on the condition of persons alleged to be mentally ill. The county judge is given authority to "examine the reports, findings and evidence and when in his opinion" such per-

son is in need of treatment, care or custody "*he shall adjudge the person to be mentally ill and order him committed to the proper state hospital * * *"*. [Emphasis supplied.]

Sec. 127–202, O.C.L.A. provides "The Eastern Oregon state hospital, situate in the city of Pendleton * * * shall be used as an asylum for such mentally diseased persons as have been or may hereafter be committed to its care and custody." It is alleged defendant and respondent Wair is superintendent of this hospital and restrained Hoffman from leaving it.

Sec. 127–202, O.C.L.A. further provides "The superintendent shall from time to time, discharge such patients as, in his opinion, are properly fit to be discharged."

Sec. 127–216, O.C.L.A. provides "The superintendent of any state hospital wherein are confined persons adjudged to be insane, may * * * discharge any patient, except one held upon an order of a court or judge having criminal jurisdiction in an action or proceeding arising out of a criminal offense, at any time * * *".

▇ Paragraph VIII of the second amended complaint contains 18 overt acts allegedly done by Hansen, the county Health Officer and Halden, Deputy County Health Officer. Paragraph IX sets forth 11 overt acts allegedly done by Keller, the examining physician and Paragraph X sets forth 5 overt acts allegedly done by Wair, the superintendent of the State hospital. We are not required to examine them all, if one or more show injury to the plaintiff pursuant to the conspiracy alleged.

In Paragraph VIII overt act No. 9, it is alleged that Halden and Hansen wilfully failed to act in good faith and pur-

---

22. Compare the rule concerning intrinsic and extrinsic fraud, Pico v. Cohn, 1891, 91 Cal. 129, 25 P. 970, 27 P. 537, 13 L.R.A. 336.

Thus, where the wrongful acts preceding the court order, like intrinsic fraud, were subject to being exposed and reviewed in the court hearing, relief thereafter based on them might not be granted; that where the wrongful acts were such as come by analogy within the rule of extrinsic fraud, and where there would be no chance or opportunity to learn of or to expose the wrongful acts at the hearing, then the acts might well be the proximate cause of the injury.

suant to the mandate of State law, in that in wilful violation of an order of the Circuit court of Multnomah county, Oregon issued on or about August 4, 1952, which required that plaintiff be brought before that court, the defendants instead forcibly took plaintiff to a place of detention. Overt act No. 10 alleges the wilful refusal of Halden and Hansen to advise the Circuit court that they had ignored the order and were detaining plaintiff against his wishes. Overt act No. 11 alleges a false return of citation, which citation purportedly stated that Halden and Hansen had followed the order of the Circuit court referred to above. Overt act No. 12 alleges an intentional suppression of the facts regarding plaintiff's illegal detention from the proper authorities.

Paragraph IX in overt act No. 16, alleges as to Keller,—"suppressing the facts regarding plaintiff's illegal detention from the proper authorities * * * ". We assume this is the same detention referred to in overt acts Nos. 9, 10 and 11 alleged as to Halden and Hansen. Overt act No. 11 alleges Keller knew of the disobedience of Hansen and Keller to the court order and that he refused to direct them to deliver plaintiff to the court rather than the Morningside hospital. Whether he had authority to so direct is not shown, but having been appointed by the court, he may have had some duty in connection with observing orders of the court when he was apprised of them.

█ These facts, which we must presume to be true at the pleading stage, show specific acts in violation of due process of law which could have caused the plaintiff injury through the imprisonment which resulted, and if found to have been performed in furtherance of the conspiracy would bind all defendants found to be members of the conspiracy.

But Keller contends he is a private practitioner and was not acting under color of law. The complaint alleges that Keller was a licensed and practicing physician within the state of Oregon, and that he had been specially ordered by the circuit judge of Multnomah county, Oregon, to make an adequate mental and psychological examination of the plaintiff. Hoffman contends Keller had been hired by the state to perform a duty and therefore was acting for the state. We do not think we are required to determine whether or not Keller, individually, was acting under color of state law.

█ The law is clear that when two or more persons conspire to violate the civil rights of an individual, acting under color of state law, if one or more of the conspirators is a state officer, then the mere fact that certain of the other conspirators are not state officers constitutes no defense to any of them under the Civil Rights statutes.[23] Clearly, Halden, Hansen and Wair were state officers. Whether or not Keller was acting under color of state law, in view of the conspiracy allegations, becomes immaterial.

Passing momentarily the questions of immunity and statutes of limitations we conclude that at least as to the overt acts specifically referred to above, the second amended complaint states a cause of action against all respondents.

### III.

*Immunity.*

Appellees Wair, Halden and Hansen also support the dismissal of the second amended complaint on the claim of their immunity, as state officials, from civil prosecution.

In Tenney v. Brandhove, 1951, 341 U. S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, the Supreme Court held that the Civil Rights Act had not abolished the common law privilege of a legislator to be free from civil liability for acts done by him in the field where legislators traditionally have power to act.

23. Baldwin v. Morgan, 5 Cir., 1958, 251 F.2d 780, 788; Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240, 249;

Valle v. Stengel, 3 Cir., 1949, 176 F.2d 697, 702.

Immunity has been extended to judges in civil actions against them, even for acts in excess of their jurisdiction, so long as they had any jurisdiction whatsoever.[24] Immunity from civil liability has also been extended to prosecuting attorneys.[25]

The immunity problem does not arise solely in Civil Rights cases. There are cases, often cited for the immunity principle, which are in reality only cases where the officer performed the duty imposed upon him by law and hence was not liable for damages for his acts; his motive was immaterial, Spalding v. Vilas, 1896, 161 U.S. 483, 499, 16 S.Ct. 631, 40 L.Ed. 780. This rule makes sense in the cases not brought under the Civil Rights Act.

But the broad scope of the Civil Rights Act would impose liability on state officers for acts done under color of law,—*acts done within*, as well as without, *the scope of their authority.*

Thus it is not enough for such a defendant in a Civil Rights case, to say— "I acted under the law—I did what the law required." True, under Snowden v. Hughes, supra, there is required allegation and proof of a particular state of mind, a purposely discriminatory intent. See Screws v. United States, supra.

Since these Civil Rights actions lie in the federal courts and defendants are usually state officials, there are involved "delicate state-federal relationships," Francis v. Lyman, 1 Cir., 1954, 216 F.2d 583, 588.[26]

In Stefanelli v. Minard, 1951, 342 U.S. 117, at pages 121–125, 72 S.Ct. 118, at page 122, 96 L.Ed. 138, Justice Frankfurter after pointing out the "far-flung and undefined range" of questions of procedural due process under the Civil Rights Acts) 342 U.S. at page 123, 72 S.Ct. at page 122) concludes with the enigmatic statement, "To suggest these difficulties is to recognize their solution." (342 U.S. at page 124, 72 S.Ct. at page 122).

To protect this "delicate state-federal relationship" some limits must be placed on the otherwise limitless sweep of the Civil Rights Act.

A broad holding that all state officials enjoyed immunity would be an improper approach. If courts held that all state officials had immunity from liability under Civil Rights actions for all acts done or committed within the os-

24. Bradley v. Fisher, 1872, 13 Wall. 335, 80 U.S. 335, 352, 20 L.Ed. 646; Alzua v. Johnson, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142; Francis v. Crafts, 1 Cir., 1953, 203 F.2d 809, 811, certiorari denied 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357; Cuiksa v. City of Mansfield, 6 Cir., 1957, 250 F.2d 700, 703, certiorari denied 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed. 2d 813; Ryan v. Scoggin, 10 Cir., 1957, 245 F.2d 54.

Contra: McShane v. Moldovan, 6 Cir., 1949, 172 F.2d 1016 and Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240, 250. Both of these cases were decided before Tenney v. Brandhove, supra. An old case, Ex parte Virginia, 1880, 100 U.S. 339, 35 L.Ed. 676, holds a judge is not protected where he acted ministerially.

25. Kenney v. Killian, D.C.W.D.Mich. 1955, 133 F.Supp. 571, 578, 580, affirmed sub nom. Kenney v. Fox, 6 Cir., 1956, 232 F.2d 288, certiorari denied 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 sub nom. Kenney v. Killian; Yaselli v. Goff, 2 Cir.,

1926, 12 F.2d 396, 56 A.L.R. 1239, affirmed per curiam 275 U.S. 503, 48 S. Ct. 155, 72 L.Ed. 395 "on the authority of Bradley v. Fisher, 13 Wall. 335, 347, 20 L.Ed. 6; Alzua v. Johnson, 231 U.S. 106, 111, 34 S.Ct. 27, 58 L.Ed. 142;" Cawley v. Warren, 7 Cir., 1954, 216 F.2d 74, 76; Laughlin v. Rosenman, 1947, 82 U.S.App.D.C. 164, 163 F.2d 838; Thompson v. Heither, 6 Cir., 1956, 235 F.2d 176.

See, Lewis v. Brautigam, 5 Cir., 1955, 227 F.2d 124, at pages 128, 129, 55 A. L.R.2d 505, as to immunity from liability for acts within the scope of jurisdiction and authority.

26. The problem has been often referred to;—In re Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; Douglas v. City of Jeannette, 1943, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324; Screws v. United States, supra, 325 U.S. at page 108, 65 S.Ct. 1031; Collins v. Hardyman, supra, 341 U.S. at page 658, 71 S.Ct. 937.

tensible scope of their authority, this would practically constitute a judicial repeal of the Civil Rights Act. Repeal is the responsibility of Congress, not the courts.

### Immunity for Discretionary Acts.

■ The approach of granting immunity to government officials for discretionary acts done within the scope of their authority, seems a proper one. Without the presence of a particular discriminatory intent they have no liability in any event. This approach says we will not inquire, subjectively—into their state of mind—where they are exercising a discretionary function.

Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 142, 118 A.L.R. 1440, was an action in the federal court against federal officers for allegedly procuring the indictment of plaintiff, "falsely, maliciously and without probable cause," at the trial of which plaintiff was acquitted. The court concluded that since the acts of the defendants "were performed in the discharge of their official duties, the motives with which those duties were performed are immaterial * * *". (At page 142). The case has been widely cited and followed for its holding that governmental officers are generally not liable for their *discretionary* acts done pursuant to their lawful authority.

A panel of this court in O'Campo v. Hardisty, 9 Cir., 1958, 262 F.2d 621, recently cited and followed Cooper v. O'Connor, supra. This case was originally a state action against Internal Revenue agents and was removed to the federal court. It was found the defendants were acting solely under color of their respective offices and by authority of the Revenue laws. The defendants were in substance performing their duties. Hence they should not be civilly liable. The panel based its decision on the "immunity" doctrine. Though neither are Civil Rights cases, we are content to follow O'Campo v. Hardisty, supra and Cooper v. O'Connor, supra, in this case and extend immunity to a state officer for his discretionary acts within the scope of his authority.

### Failure of jailors or keepers to release a prisoner—not a basis for liability.

■ We think the failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of allegations of malice, motive or intent. His act is required by law. Even if the statute were later held void or the conviction later set aside, so long as he acted under authority of the writ or warrant, he was performing a duty which the law *at that time* required him to perform.

In Francis v. Lyman, 1 Cir., 1954, 216 F.2d 583, at pages 588-589, Judge Magruder states: "The *privilege* of the jailor to impose the confinement * * * is, we think, quite as time honored in the Anglo-American common law as is the *immunity* of members of the legislature and of judges from civil liability for acts done within the sphere of their judicial activities," citing cases. [Emphasis supplied.]

In Kenney v. Fox, 6 Cir., 1956, 232 F.2d 288, at page 290, the court stated with reference to two doctors, " * * * the institutional doctors should not be expected or even permitted to go behind a court order of commitment of a person to a state mental hospital where, on its face, the order appears to be valid."

In Dunn v. Gazzola, 1 Cir., 1954, 216 F.2d 709, 710, where the plaintiff complained of failure to be released from custody, a dismissal as to Van Waters, superintendent of a reformatory and McDowell, Commissioner of Corrections, was affirmed on authority of Francis v. Lyman, supra.

■ We now apply the foregoing principles to the acts charged to the defendants. Obviously no immunity should be granted to the officials who wilfully disobeyed an order of court. This disobedience affirmatively appears as to Halden and Hansen; and Keller is al-

leged to have conspired with them to have effected this object of the conspiracy.

Paragraph X in overt act Nos. 1 and 2, allege Wair restrained plaintiff from leaving the Oregon State Hospital despite the fact that Wair knew plaintiff was being illegally held and was not suffering from mental illness. Overt act No. 3 alleges Wair suppressed the facts of such illegal detention from the proper authorities. This detention of Hoffman at the Oregon State Hospital is alleged to have been from August 5, 1952 to October 23, 1952. No detention of Hoffman by Wair is alleged to have occurred at Morningside Hospital or elsewhere other than at the State Mental Hospital. Since Sec. 4 of Chap. 571 of the Oregon Laws of 1949 requires a judge to determine if a person is mentally ill and if so, order him committed to a state mental hospital, we assume Hoffman was at the State hospital under a judicial commitment.

Since Wair detained Hoffman under a judicial commitment he was individually performing a duty from which no liability would ensue. For such acts, he enjoyed the immunity of a jailor.

Wair, however, had authority to release Hoffman from the State Mental Hospital, when in Wair's opinion this was proper. Sec. 127–202, O.C.L.A.; Sec. 127–216, O.C.L.A. This was a discretionary function and under the authorities cited supra, Wair possessed immunity from civil actions in the exercise of this function.

There remains a further troublesome question. Assuming Wair is immune for acts done while complying with an order for Hoffman's commitment, and acts done in the exercise of a discretionary function, does he lose that immunity by conspiracy with the other officials? The immunity of a labor union under the

Antitrust laws is lost when it conspires with employers.[27] The immunity of co-operatives under Antitrust laws may be lost when they conspire with third persons.[28]

We think our case rests on a different basis. If the official in complying with an order for a plaintiff's commitment, and in performing his discretionary acts is immune regardless of his motive, then a conspiratorial motive or intent should not make him liable. By the same token, we do not think that any acts done by defendant Wair, which come within the immunity principle, can be used against the other defendants, alleged to have conspired with Wair, to prove damage to the plaintiff.

As to the remaining overt acts charged to Wair, overt act No. 4 alleges Wair's refusal to permit plaintiff to correspond or communicate with appropriate authorities, "except to a limited extent." If Hoffman could correspond at all, he could make known his complaint. In addition, the matter complained of could not have been the proximate cause of the injury.

Overt act No. 5 alleges Wair intimidated Hoffman "in an effort to force him to dismiss a civil action" which Hoffman had filed. There is no allegation that the action was ever dismissed and the alleged overt act could not have been the proximate cause of any injury.

## IV.

### Statute of Limitations.

The problem of the statute of limitations is very much in this case. It was raised as a ground for the motion to dismiss by each respondent. It was not ruled on by the trial court. Neither appellant nor respondents have adequately analyzed or briefed the problems pertaining to such issue. Some of these prob-

27. Bradley Co. v. Local Union No. 3 etc., 1945, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939.

28. United States v. Maryland Coop. Milk Producers, D.Col.1956, 145 F.Supp. 151, 153–154; United States v. Maryland & Virginia Milk Producers Ass'n, Inc., D.C. 1958, 167 F.Supp. 45; Id. 167 F.Supp. 799; April v. National Cranberry Ass'n, D.C.Mass.1958, 168 F.Supp. 919; United States v. Borden Co., 1939, 308 U.S. 188, 204, 60 S.Ct. 182, 84 L.Ed. 181; United States v. Maryland & Virginia Milk Producers Ass'n, 1949, 85 U.S.App. D.C. 180, 179 F.2d 426, 428.

lems we here decide, others are returned to the trial court for consideration.

Specifically, Hoffman relies upon O.C. L.A. 1–204 (now O.R.S. 12.080) which provides, "Within six years. 1. * * * 2. an action upon a liability created by statute, other than a penalty or forfeiture, excepting those mentioned in section 1–207, as amended." The matters mentioned in Section 1–207 (now O.R.S. 12.120) are not pertinent.

The appellees rely upon a two year statute, O.C.L.A. 1–206 (now O.R.S. 12.110), "Within two years,—(1) an action for assault, battery, false imprisonment, for criminal conversation, *or for any injury to the person or rights of another, not arising on contract, and not herein especially enumerated;* provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of fraud or deceit * * *". [Emphasis supplied.]

Another statute providing limitation of three years is worthy of consideration and is included in the note.[29]

### (a) *When does the statute of limitations begin to run?*

 There is reference in the briefs *but not in the record* to problems concerning the time of issuance of summons and service of process. We are bound by the record.

 The filing of the complaint in the district court tolls the statute of limitations where the action is to enforce as here, a federally created right, Bomar v. Keyes, 2 Cir., 1947, 162 F.2d 136, 141. See, Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520; cf. Mohler v. Miller, 6 Cir., 1956, 235 F.2d 153.

 In civil conspiracy cases for treble damages under the Antitrust laws, the statute of limitations runs from the overt act alleged to have caused damage. Burnham Chemical Co. v. Borax Consol. Ltd., 9 Cir., 1948, 170 F.2d 569, at pages 575 and 595; Suckow Borax Mines Consol. v. Borax Consol. Ltd., 9 Cir., 185 F.2d 196, 208; Momand v. Universal Film Exch. Inc., 1 Cir., 1948, 172 F.2d 37, at page 49; Williamson v. Columbia Gas & Elec. Corp., 3 Cir., 1950, 186 F.2d 464, 469; Steiner v. 20th Century-Fox Film Corp., 9 Cir., 1956, 232 F.2d 190 at page 194.

We see no reason why the same rule should not apply in civil conspiracy to violate the Civil Rights act and we so hold.

In ascertaining which is the last in time of the overt acts, we note several dates mentioned in the second amended complaint and from this complaint, the significance of these dates can be ascertained.[30]

---

29. O.C.L.A. 1–205 (now O.R.S. 12.100) "Within three years: (1) *An action against a sheriff, coroner, or constable, upon a liability incurred by the doing of an act in his official capacity, and in virtue of his office; or by the omission of an official duty;* including the nonpayment of money collected upon an execution. But this section shall not apply to an action for an escape. (2) An action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state, except where the statute imposing it prescribes a different limitation." O.C.L.A. 99–201 (now O.R.S. 431.440) provides that health officers possess the powers of constables.

30. The chronology of events is as follows:—

| | |
|---|---|
| 1/10/52 | Plaintiff taken into custody. |
| 8/ 5/52 | Order of Circuit court (Trial court) of Multnomah county that plaintiff be brought before the court. |
| 10/23/52 | Release of plaintiff from custody. |
| 1/16/54 | Original complaint filed by plaintiff against Dickson, *Halden*, Dammasch, *Keller*, John Doe and Richard Roe. |

[The two names emphasized are those of two of the original defendants whose names appear in the second amended complaint, now before this court].

| | |
|---|---|
| 8/10/54 | Original complaint dismissed for failure to prosecute. |
| 6/18/56 | Alleged date of termination of conspiracy. |
| 11/ 1/56 | Dismissal vacated and set aside. |

(a) January 10, 1952:—Plaintiff was taken into custody;

(b) August 5, 1952:—Various acts of the defendants are alleged as having occurred on this date; property was seized from plaintiff's person on this date; the court order was issued from the circuit or trial court of Multnomah county, Oregon, requiring plaintiff to be brought before the court; plaintiff was delivered to the Morningside hospital rather than brought before the court;

(c) October 23, 1952:—Paragraph XI of the second amended complaint alleges confinement in the Oregon State Hospital at Pendleton, from August 5, 1952 to and including October 23, 1952;

(d) June 18, 1956:—Paragraphs VII, VIII, IX, X, in substance allege the conspiracy continued to June 18, 1956. No other information appears in the record nor is there any other allegation of fact as to what occurred on that date. In the briefs, appellant informs this court that on such date Hoffman was restored to sanity. This statement appearing in the briefs is not a matter in the record and therefore we have a bald allegation in the second amended complaint that the conspiracy continued to a certain date with no facts as to what is the significance of the date.

 June 18, 1956, is therefore, by no stretch of the imagination, an allegation of an overt act, and even if the conspiracy did continue to such date, the date has no significance in our determination of the case, since injury and damage can only flow from overt acts and not from the mere continuance of a conspiracy. We therefore ignore the date of June 18, 1956. Since October 23, 1952, is the last overt act alleged from which damage could have flowed, this date becomes the last date from which a statute of limitations might run.

(b) *Sanity or competence of the plaintiff.*

 Hoffman cites in his brief, O.R.S. 12.160 to the effect that if, when a cause of action accrues, a person is insane or "in a sentence for less than life," time of disability shall not be counted. Hoffman's brief also states he was "stripped of civil rights January 10, 1952 when judged mentally ill. Only by virtue of a hearing June 18, 1956, was he restored to civil rights and adjudged competent." None of this is in the record. There is no allegation that at any time Hoffman was judged mentally ill or incompetent or adjudged competent or restored to civil rights. Since these matters do not appear in the record we may not consider them on this appeal.

(c) *The adding of Wair and Hansen as parties defendant on December 18, 1956.*

 The original complaint was filed on January 16, 1954, but of the defendants who now appear in the caption and the body of the second amended complaint, only Halden and Keller were named in the original complaint. The amended complaint as set forth in the supplemental transcript of record does not contain a caption. There appears only "Title of district court and cause." The body of the complaint however, names Hansen, Halden, Wair and Keller. We assume from that, they were named in the caption. We do not consider this too important, in that the caption of an action is only the handle to identify it

12/18/56 Amended complaint filed; caption not in record; body of complaint names *Halden,* Hansen, Wair and *Keller,* (only Halden and Keller named in original complaint);

1/21/57 Amended complaint dismissed as to Hansen and Halden; 15 days to amend.

3/ 1/57 Amended complaint dismissed as to Wair, with leave to amend;

3/ 4/57 Second amended complaint filed, Halden, Hansen, Keller and Wair named as defendants.

10/14/57 Judgment dismissing Second amended complaint as to all defendants (Halden, Hansen, Keller and Wair).

and ordinarily the determination of whether or not a defendant is properly in the case hinges upon the allegations in the body of the complaint and not upon his inclusion in the caption.

The amended complaint was filed December 18, 1956, and by it, Wair and Hansen were made defendants. It was filed more than two years after the last overt act. The second amended complaint, with which we here deal, was filed March 4, 1957.

Questions are thus presented, first as to whether the plaintiff by amending on December 18, 1956, and on March 4, 1957, could bring into the action defendants Wair and Hansen who were not named in the original complaint, and second, the application of the statute of limitations.

■ The general rule is that an amendment of a complaint, dates back to the filing of the original complaint, Rule 15(c), F.R.Civ.P., 28 U.S.C.A. Where the same defendant named in an amended complaint was named in the original complaint, no problem is ordinarily presented. But where new defendants are brought in after the running of the statute of limitations, the situation is entirely different. Where a defendant has been sued in a wrong capacity in an original complaint, an amended complaint filed beyond the statute of limitations has been held good, as against the plea of the statute.[31]

But where new defendants are brought into the action, without previous notice or service of process, a different situation exists. This is like the institution of a new action against the new parties.[32] Prior to the filing of the amended complaint were defendants Wair and Hansen sufficiently apprised of the pendency of the action so as to prevent their reliance on an applicable statute of limitations? There is nothing in the record to so indicate. It is true the original complaint, in addition to charging Halden, Keller and two other named individuals also listed as John Doe, Jane Doe and Richard Roe, in the caption. The original complaint nowhere in the body thereof, states that the true identity of these fictitious parties was unknown to the plaintiff. Nor does there appear in the amended complaint or the second amended complaint, any allegation or statement or even indication that defendants Wair and Hansen, named for the first time in the amended complaint in December of 1956, and then named in the second amended complaint in March of 1957, were the persons designated by plaintiff in the caption of the original complaint as John Doe and Richard Roe.

We therefore have a situation where after a period of time has expired after the last overt act, certain defendants for the first time are named in an amended complaint. We conclude that the general rule that an amendment dates back to the filing of the complaint does not apply in this situation as to these defendants, and that as to them the statute of limitations began to run on October 23, 1952 and that the filing of the action on January 16, 1954 did not toll the running of the statute, and only when the amended complaint was filed on December 18, 1956, was the running of the statute tolled.[33] Whether the statute of limitations had run by that time, we do not decide.

(d) *What law controls.*

■■ With the exception of a one year statute of limitations in Section 1986, Title 42 U.S.C.A. and pertaining solely to the remedies contained in such section, there is no period of limitations contained within the Civil Rights statutes, or elsewhere in the federal statutes, pertaining to such cases. "That the action depends upon or arises under the

---

31. See Goodrich v. England, 9 Cir., 1958, 262 F.2d 298, where a discussion appears of this problem.

32. Messelt v. Security Storage Co., D.C. Del.1953, 14 F.R.D. 507.

33. Appellant in his briefs makes reference to the fact that another action was filed against Wair and Hansen at about the same time the original complaint was filed. This material appearing in a brief is not part of the record, and even if it were, would not affect our decision in this matter.

laws of the United States does not preclude the application of the statute of limitations of the state is established beyond controversy by cases cited by * * * McClaine v. Rankin, (1905) 197 U.S. [154,] 158, 25 S.Ct. 410, 49 L.Ed. 702," O'Sullivan v. Felix (1914) 233 U.S. 318, 322, 34 S.Ct. 596, 598, 58 L.Ed. 980. In a civil rights case the applicable statute of limitations is that of the state wherein the action arose and the district court is located. Rules of Decision Act, 28 U.S.C.A. § 1652, Wilson v. Hinman, 10 Cir., 1949, 172 F.2d 914. This is the general rule in other types of actions, Cope v. Anderson, 1947, 331 U.S. 461, 463, 67 S.Ct. 1340, 91 L.Ed. 1602; McClellan v. Montana-Dakota Utilities Co., 8 Cir., 1953, 204 F.2d 166, 168; Momand v. Universal Film Exchange, supra. Accordingly, the applicable state statute of limitations in Oregon controls, except insofar as the action is based on Section 1986, Title 42 U.S.C.A.

### (e) What is Oregon law?

Having progressed this far, we come to unchartered seas. What is the applicable Oregon statute? Three of them have been referred to above.

Campbell v. City of Haverhill, 1895, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280, which dealt with problems arising from the lack of a limitations period in federal statutes concerning patents, laid down the guide that the state statute of limitations applicable to the federal right was that applicable to state actions of a similar nature.

We have been cited to no Oregon law which controls on the limitations problem. Our research develops Shelton v. Paris, 1953, 199 Or. 365, 261 P.2d 856, 858, which may assist with its definition of a "liability created by statute."

Since this problem of Oregon law was not adequately briefed below or considered by the trial court, and since the district judges in Oregon are familiar with Oregon law, we do not pass upon this question, but reserve it until such time as the district court in Oregon has studied and ruled on the question.

For the reasons stated above, the judgment of dismissal as to Wair is affirmed. The judgment is reversed as to Halden, Hansen and Keller and as to these three defendants the case is remanded to the district court for further proceedings.