**Dorothy HOLLCROFT, Plaintiff,**

v.

**DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE, Defendant.**

**Carrie B. LOVE, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF the ARMY, Defendant.**

Civ. Nos. S–85–1734 MLS, S–87–838 MLS.

United States District Court, E.D. California.

June 9, 1988.

Dorothy Hollcroft, Elverta, Cal., in pro. per.

Rose Marie McDuff, Sacramento, Cal., in pro. per.

Carrie Love, Sacramento, Cal., in pro. per.

David F. Levi, U.S. Atty., Joseph E. Maloney, Asst. U.S. Atty., Sacramento, Cal., for Dept. of Treasury, I.R.S.

David F. Levi, U.S. Atty., Andrea M. Miller, Asst. U.S. Atty., Sacramento, Cal., for U.S. Dept. of Army.

### MEMORANDUM AND ORDER

MILTON L. SCHWARTZ, District Judge.

In each of the above-entitled actions the government filed a motion to dismiss the complaint on the ground that the complaints named the wrong defendant; each complaint names the department which employed the plaintiff(s) instead of the secretary of that department. The court vacated the February 5, 1988 hearing on the motions pursuant to Local Rule 230(h) and ordered them submitted on the briefs and supporting documents. Because the two

actions involve a common question of law, the court orders them consolidated for the purpose of these motions only, pursuant to Federal Rule of Civil Procedure 42(a). After reviewing the records and briefs on file and considering the pertinent legal principles involved, the court now renders its decision.

### I. BACKGROUND

A. *Hollcroft v. Department of the Treasury, Civ. S–85–1734 ("the Hollcroft action")*

On December 12, 1985, plaintiff, acting *in propria persona*, filed a form civil complaint under Title VII naming as defendant the "Department of the Treasury/Internal Revenue Service." According to the complaint, plaintiff was denied promotions and was reassigned "to a position with no upward mobility" due to discrimination on the basis of her sex, race and national origin (Hispanic), and age. Attached to the complaint are numerous documents, including a right-to-sue letter signed by the Director, Office of Equal Opportunity Program, Department of the Treasury; a final decision of the Department of the Treasury that plaintiff was not discriminated against; and affidavits, evaluations, and other materials connected with plaintiff's administrative charges.

On September 15, 1986, the government moved to dismiss the complaint without leave to amend on the ground that the Secretary of the Treasury is not named as a defendant. By written order filed April 9, 1987, the court denied the government's motion.[1] Nevertheless, on October 2, the government filed a second motion to dismiss the complaint on identical grounds.[2]

---

**1.** That order is strikingly similar to an order issued December 14, 1987 by Judge Legge in *Cupp v. Veterans Administration Hospital,* 677 F.Supp. 1018 (N.D.Cal.1987). Like this court's April 9 order, the *Cupp* decision finds a 1983 Ninth Circuit case controlling and quotes that case at length. Both orders reject the government's position that a later Ninth Circuit case limits the 1983 case. This court adopts in full the reasoning set forth in Judge Legge's order in *Cupp.*

**2.** The court notes that the Local Rules provide a mechanism by which parties may move the court to reconsider any ruling. *See* Local Rule 230(k). Defendant has not filed a motion to reconsider, but the court will so construe the government's second motion to dismiss the *Hollcroft* action. Local Rule 230(k)(1) requires the party seeking reconsideration to set forth "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion or what other

On October 30, 1987, plaintiff filed an "Answer to Dismiss," which the court will construe as an opposition to the government's motion.

### B. *Love, et al. v. United States Department of the Army, Civ. S–87–838 ("the Love action")*

On June 5, 1987, Carrie Love and Rose Marie McDuff, each acting *in propria persona,* filed a class action Title VII complaint naming as defendant the "United States Department of the Army." According to the complaint, plaintiffs were denied opportunities for job advancement and equal access to job training and were ultimately terminated from employment as a result of discrimination on the basis of race (black), sex and age, and with respect to plaintiff McDuff, in retaliation for filing prior grievances. Plaintiffs allege they received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on May 7, 1987, a copy of which is attached to the complaint. On August 25, the government moved to dismiss the complaint without leave to amend on the ground that the Secretary of the Army is not named as a defendant. On January 21, 1988, plaintiffs filed their opposition to the government's motion.

### II. ANALYSIS

The Civil Rights Act of 1964, 42 U.S.C. § 1971 *et seq.* ("Act"), was designed to prohibit and provide the means of terminating the most serious types of discrimination in voting, public accommodations and education, and employment. H.R.Rep. No. 914, 88th Cong., 2d Sess. 2, *reprinted in* 1964 U.S.Code Cong. & Admin.News 2355, 2393. Title VII of the Act addressed discrimination in employment and its purpose was "to eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment based on race, color, religion, or national origin." *Id.* at 2401. Several Congressmen who supported the Act emphasized the relationship between the various rights covered by the Act and the importance of equal treatment in employment:

> The right to vote, however, does not have much meaning on an empty stomach. The impetus to achieve excellence in education is lacking if gainful employment is closed to the graduate. The opportunity to enter a restaurant or hotel is a shallow victory where one's pockets are empty. The principle of equal treatment under law can have little meaning if in practice its benefits are denied the citizen.

*Id.* at 2513 (comments by Representatives McCulloch, Lindsay, Cahill, Shriver, MacGregor, Mathias and Bromwell).

Section 717 of the Act, 42 U.S.C. § 2000e–16, prohibits discrimination in federal employment based on specified classifications. Subsection (c) sets forth the procedure by which an aggrieved employee may bring a civil action. Within 30 days of receipt of the right-to-sue letter, an aggrieved employee may file a civil action in which "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e–16(c).

The government's position is that the complaints must be dismissed because the plaintiffs have named the department and not the head of the department as defendant. The court rejects this position for three reasons. First, the exacting standard the government urges the court to apply is wholly at odds with both the modern standards of notice pleading and the liberal standard to be afforded the pleadings of *pro se* litigants. Second, the government has failed to demonstrate it has been prejudiced by plaintiffs' failure to name the proper defendant. Third, and most importantly, the Ninth Circuit case of *Rice v. Hamilton Air Force Base Commissary,* 720 F.2d 1082 (1983), is directly on point and supports plaintiffs' position.

---

grounds exist for the motion." No new or different facts are presented in the second motion, and while the government asserts the Ninth Circuit has "recently" clarified the law in this area in *Hymen v. Merit Systems Protection Board,* 799 F.2d 1421 (1986) (per curiam), *cert. denied,* — U.S. ——, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987), that case was cited in this court's April 9 order.

## A. *Notice Pleading*

Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). Professor Moore explains that:

This mandate is the heart of the rules on pleadings. Its meaning is well stated in a Supreme Court decision handed down just after the Federal Rules had been submitted to Congress. Justice Black spoke for a unanimous Court: "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end."

2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.34, at 8–231 (2d ed. 1987) (footnote omitted) (quoting *Maty v. Grasselli Chemical Co.,* 303 U.S. 197, 200, 58 S.Ct. 507, 509, 82 L.Ed. 745 (1938)). Modern notice pleading eschews the sterile formalism of code pleading; its goal is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), and not to require the incantation of technical language which magically unlocks the courtroom door. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* at 48, 78 S.Ct. at 103. Missteps by *pro se* litigants are certainly deserving of no less leniency.

Cases are legion which require the court to hold a *pro se* complaint, "however inartfully pleaded," to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam); *see also Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Karim–Panahi v. Los Angeles Police Department,* 839 F.2d 621 (9th Cir. 1988); *Eldridge v. Block,* 832 F.2d 1132 (9th Cir.1987); *Noll v. Carlson,* 809 F.2d

1446, 1448 (9th Cir.1987); *Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986); *Borzeka v. Heckler,* 739 F.2d 444, 447 n. 2 (9th Cir.1984) ("We are generally more solicitous of the rights of *pro se* litigants, particularly when technical jurisdictional requirements are involved."); *Sherman v. Yakahi,* 549 F.2d 1287, 1290 (9th Cir.1977). This rule applies with particular force to civil rights cases, *see King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1987); *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc), and its application is especially apt in Title VII cases which are frequently initiated by lay persons. The reasons supporting this rule are well stated in *Rice:*

In determining whether Rice complied with the procedural portions of section 717, we are guided by the principle that "[t]he Equal Employment Opportunity Act is a remedial statute to be liberally construed in favor of the victims of discrimination." [Citation omitted.] This liberal construction of the technical aspects of section 717 is particularly appropriate where the complainant, as here, is a layman proceeding *pro se.* The pleadings show that Rice is weak in both legal knowledge and basic language skills. In such a case, Title VII should not be unnecessarily interpreted in an overly technical fashion that will prevent an adjudication on the merits. [Citations omitted.] This liberal reading of the statute is in harmony with the Supreme Court's admonition that "a technical reading [of Title VII] would be 'particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.'" *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 397, 102 S.Ct. 1127, 1134, 71 L.Ed.2d 234 (1982) (quoting *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed. 2d 679 (1972)).

720 F.2d at 1084.

## B. *Absence of Prejudice*

The liberal standard required to be applied to *pro se* pleadings certainly encompasses the complaints in the above-entitled actions in which plaintiffs request the phrase "Department of the Treasury (Army)" be read "Secretary of the Trea-

sury (Army)."[3] Under those circumstances in which a liberal reading might result in prejudice to the opposing party, such reading might be inappropriate. However, when the only deficiency in the pleading is that it names the employing agency and not the agency head, no prejudice can be demonstrated. The reason for this is best stated by Judge Brown in his dissenting opinion in *Gonzales v. Secretary of the Air Force*, 824 F.2d 392 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1245, 99 L.Ed.2d 443 (1988):

> It is important to remember that even if the Secretary had been the named party, he, personally, probably *never* would have received notice of Gonzales' routine Title VII claim. The Secretary, when sued solely in his official capacity, and the Air Force are functionally identical for purposes of this suit and this appeal. As far as Gonzales is concerned, they are one and the same. With all sides knowing this to be so, I am at a loss to know why I—and all other Judges—cannot "know" the same.
>
> Whether the Air Force or some functionary in the office of the Secretary is served, the same people at the Department of the Air Force will process the summons, the same Air Force representative will appear in court, and the same entity will shoulder the burden of loss if Gonzales prevails. While historically, legal fictions have been utilized to meet the needs of justice, *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), legal fictions should never be utilized to frustrate everyday realities. This fiction should not unjustly penalize a loyal government employee whose only mistake in prosecuting his good faith claim was that he, or his lawyer, failed to understand that even though his adversary throughout four years of EEOC administrative hearings had been "the Department," suddenly, and with no explanation, his opponent was transformed into "the Secretary."
>
> The Air Force representatives who received the first complaint naming "The Air Force" were, in all likelihood, the same people who received the amended complaint naming "The Secretary of the Air Force." I cannot believe that the law tolerates such an absurdity that the Secretary was "prejudiced" by this mistake.

*Id.* at 398–99 (emphasis in original).

### C. *The Rice Decision*

The court's April 9 order denying the government's motion to dismiss the *Holl-*

---

**3.** Such liberality might well be inappropriate in a case such as *Hymen v. Merit Systems Protection Board*, 799 F.2d 1421 (9th Cir.1986) (per curiam), *cert. denied*, —— U.S. ——, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987). In that case, the plaintiff failed to name the secretary or the employing department and instead named as defendant the board which heard his administrative charge. The legislative history of the pertinent act in *Hymen*, the Civil Service Reform Act of 1978, 5 U.S.C. § 552 *et seq.*, suggests that the crucial distinction is not between the agency and the head of the agency, but between the employing agency and the administrative board which reviews the employee's claims. *See* S.Rep. 969, 95th Cong., 2d Sess. 62, *reprinted in* 1978 U.S. Code Cong. & Admin. News 2723, 2784 ("In the interest of clarity, the subsection specifies that when judicial review is sought of an agency action appealed to the [Merit Systems Protection] Board under section 7701, the aggrieved employee or applicant should bring suit against the agency that took the personnel action in question, not the Board.").

The same distinction is suggested by the legislative history to the 1972 amendments to Title VII. Congress amended Title VII because it found that the existing procedure in which the agency itself was responsible for investigating discrimination complaints was insufficient and did not adequately redress discriminatory practices. Under the amended procedure, the agency head appoints an outside hearing examiner who conducts an investigation. The findings and conclusions of the examiner are given in the nature of a recommendation to the agency head who then makes the final determination as to whether discrimination exists. This final decision is then reviewable by the EEOC. H.R. Rep. 238, 92d Cong. 2d Sess. 2, *reprinted in* 1972 U.S. Code Cong. & Admin. News 2137, 2159–60; 29 C.F.R. § 1613 *et seq.* Thus, it appears from the legislative history to both the Civil Service Reform Act and Title VII that the relevant distinction is between the employing agency and the administrative body responsible for reviewing the agency's decision, not between the head of the agency and the agency itself. Because the federal bureaucracy is so large, it is possible that a complaint that names the administrative body, like the one in *Hymen*, would not give notice to the proper authorities. As concluded below, however, this argument is precluded in cases such as the ones at bar.

*croft* complaint concluded that the decision in *Rice* was controlling. The government's second motion to dismiss the *Hollcroft* complaint contends, "[r]ecently ... the Ninth Circuit has clarified its holding in the *Rice* case to make clear that one does not 'name' the proper defendant merely by attaching documents from which the identity of the proper defendant may be inferred," citing *Hymen*. It is necessary, therefore, to quote *Rice* in reexamining whether that decision is controlling:

It is undisputed that the improper defendant was named at the top of Rice's timely filing. That, though, does not compel a finding that the proper defendant was not, in fact, named. This court held in *Hoffman v. Halden,* 268 F.2d 280 (9th Cir.1959), that the question of whether a defendant is properly in a case is not resolved by merely reading the caption of a complaint. Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party *is intended* as a defendant. *Id.* at 303–04. *Accord Tyrolf v. Veterans Administration,* 82 F.R.D. 372, 374–75 (E.D.La.1979).

An examination of the papers filed with Rice's request for counsel shows that the proper defendant, the Secretary of the Navy, was *sufficiently identified.* Rice attached the Secretary of the Navy's own disposition of Rice's claim to the request for appointed counsel. The EEOC right-to-sue letter, naming *the Navy* as the responding employer, was attached to the request. It is clear from reading the filing that the Secretary of the Navy is being sued for employment discrimination. *Cf. Atonio v. Wards Cove Packing Co., Inc.,* 703 F.2d 329, 330 (9th Cir.1982) (apparent from body of EEOC complaint that employer not named in charge was object of complaint).[2]

We might reach a different conclusion if there was any indication that section 717(c)'s requirement of a proper defendant was meant as a trap for the unwary *pro se* litigant. It is unclear exactly what the purpose of the requirement is, though in practice, the requirement al-

lows dismissals of defendants sued improperly. *See, e.g., Nolan v. Cleland,* 686 F.2d 806, 815 n. 18 (9th Cir.1982); *Royal v. Bergland,* 428 F.Supp. 75, 76 (D.D.C.), *appeal dismissed,* 434 U.S. 883, 98 S.Ct. 253, 54 L.Ed.2d 169 (1977). It has not been employed as a method of nonsuiting *pro se* plaintiffs. *We are satisfied that the proper defendant is named in a discrimination suit under section 717 where the administrative disposition of the discrimination complaint is attached to a complainant's timely filing.*

---

[2] The Fourth Circuit once stated: [¶] A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring the parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else. [¶] *United States v. A.H. Fischer Lumber Co.,* 162 F.2d 872, 873 (4th Cir.1947). This advice is not without relevance here.

720 F.2d at 1085–86 (emphasis added).

It is true, as the government notes, that none of the papers attached to the complaints in either of the above-entitled actions specifically name the secretary of the employing agency. It is also true that in *Hymen,* a panel of the Ninth Circuit characterized the holding in *Rice* in a way which appears to support the government's position. The *Hymen* court noted, "[w]e have ... held that the requirement [of naming the proper defendant] is satisfied where the pro se litigant attached as part of his complaint an administrative order which named the proper defendant." *Hymen,* 799 F.2d at 1422 (citing *Rice,* 720 F.2d at 1084–86). A close reading of *Rice,* however, reveals no such requirement. Indeed, it appears the *Rice* court carefully avoided creating such a requirement. Moreover, the express holding of *Rice* creates a *per se* rule that the timely filing of the administrative disposition of the discrimination complaint satisfies the requirement of naming the proper defendant under section 717. 720 F.2d at 1086.

In the *Hollcroft* action, the government does not contend plaintiff failed to timely file the administrative disposition of her discrimination complaint; rather, it merely reiterates that the disposition, "like plaintiff's complaint, names the Department, not the Secretary." To accept this argument is to elevate form over substance. EEOC regulations require that "[t]he *head* of each agency shall exercise *personal* leadership in establishing, maintaining, and carrying out a continuing affirmative program designed to promote equal opportunity in every aspect of agency personnel policy and practice in the employment, development, advancement, and treatment of employees." 29 C.F.R. § 1613.203 (emphasis added). The regulations also make clear that the director of equal employment opportunity exercises the powers of the secretary as his or her designee. "The Director of Equal Employment Opportunity shall be under the immediate supervision of the head of his agency, and shall be given the authority necessary to enable him to carry out his responsibilities under the regulations in this subpart ... [including, w]hen authorized by the head of the agency, making the decision under § 1613.221 for the head of the agency on complaints of discrimination." *Id.* at § 1613.204(c), (d)(7). Under section 1613.221, "[t]he head of the agency, or his designee, shall make the decision of the agency on a complaint based on the information in the complaint file." The letter attached to the *Hollcroft* complaint from the Treasury Department's Director of Office of Equal Opportunity Program states, "[u]nder the authority vested in me by the rules and regulations of the Treasury Department and the Equal Employment Opportunity Commission, I am rendering a decision on the complaint of discrimination filed by Dorothy Holcroft [*sic*]...." It is thus indisputable that the

Director is issuing the decision as a designee of the Secretary, and the fact that the stationery on which the letter is written bears the heading "Department of the Treasury" rather than "Secretary of the Treasury" should not, in this court's opinion, bar plaintiff's access to the courts.

The court acknowledges that the spirit which infuses recent Ninth Circuit cases is contrary to the one exhibited in *Rice. See Jordan v. Clark*, 847 F.2d 1368, 1372–1373 (9th Cir.1988); *Koucky v. Department of the Navy*, 820 F.2d 300 (9th Cir.1987); *Hymen*, 799 F.2d 1421; *Cooper v. United States Postal Service*, 740 F.2d 714 (9th Cir.1984), *cert. denied*, 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985). Nevertheless, neither the Supreme Court nor the Ninth Circuit has overruled the relevant holding in *Rice* and that holding is controlling while the more recent decisions are not. As noted above, *Hymen* is distinguishable on its facts and this court is unwilling to conclude that the *Hymen* panel intended to limit the *Rice* holding *sub silentio.*[4] In *Cooper*, the court did not comment on whether plaintiff[5] attached the administrative disposition of her discrimination complaint to her court complaint, nor did it discuss the *Rice* holding at issue here. The only issue addressed in *Cooper* was whether plaintiff's proposed amended complaint naming the Postmaster General could relate back to the filing of the original complaint. "In view of Cooper's conceded failure to file a complaint against the Postmaster General within the statutory period, her claim must be barred unless her attempt to substitute the Postmaster General as a defendant relates back to the date her original complaint was filed." 740 F.2d at 716. Similarly, in *Koucky*, the court did not discuss whether any administrative disposition or other doc-

---

**4.** A panel of the Ninth Circuit is duty bound to follow decisions of the circuit unless they are overruled. *Willis v. United States*, 614 F.2d 1200, 1204 (9th Cir.1979); *Taylor v. Burlington Northern Railroad Company*, 787 F.2d 1309, 1313 (9th Cir.1986); *cf. Cupp*, 677 F.Supp. at 1021 ("More explanation from the *Hymen* court would have been appropriate if it had intended to overrule or limit *Rice* as drastically as might appear from *Hymen's* short statement."); *but see*

*Kimmons v. Veterans Administration Hospital*, No. C–86–5813 MHP (N.D.Cal. May 13, 1987) (Hymen "has limited *Rice* to its facts.").

**5.** The plaintiff was represented by counsel before the Ninth Circuit but the decision does not indicate whether she was represented at the district court. The same is true in *Koucky*.

uments were attached to the plaintiff's complaint, nor did it cite or discuss the *Rice* opinion; the same is true in *Jordan*.

## III. CONCLUSION

Words are the tools of the lawyer's craft. It is therefore appropriate for the court to subject legal documents such as contracts drafted by lawyers to intense scrutiny. But a pleading is not a contract and the lesson of *Zipes* and *Rice* is that intense scrutiny is inappropriate when the statutory scheme envisions a process initiated by lay persons, not trained lawyers. The liberal standard to be applied to *pro se* pleadings and the lack of prejudice to the defendant both counsel against dismissing the complaints. But even if the court were to ignore these factors, the simple fact is that the *Rice* decision controls the outcome reached here.

Accordingly, IT IS ORDERED:

1. That the government's motions to dismiss the complaints in the *Hollcroft* action and the *Love* action are DENIED; and

2. That a pretrial scheduling conference in the *Love* action is set for Friday, September 9, 1988 at 9:00 a.m., in courtroom 3.